[No. 22643-6-I. Division One. January 3, 1990.]

THE STATE OF WASHINGTON, *Respondent,* v. MARK CURTIS HUDSON, *Appellant.*

*Eric Broman* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Jeffrey H. Smith, Deputy,* for respondent.

WEBSTER, J.—Mark Curtis Hudson, a juvenile, appeals his convictions of joyriding and hindering, delaying, or obstructing a public servant in the performance of official duties. The latter conviction is based on Hudson's flight from police officers attempting in good faith to detain him.

## FACTS

Three police officers stopped Hudson and two other juveniles after the officers discovered the car Hudson was driving, a brand new 1987 Nissan Maxima, had a license plate belonging to a Toyota Celica. Further investigation revealed an unrecorded vehicle information number.

Two of the officers, wearing plain clothes and riding in an unmarked patrol car, pulled their vehicle in front of the Maxima at an intersection to block its path. The other officer, uniformed and driving a marked patrol car, stopped along the Maxima's driver's side. The plainclothed officers exited their unmarked vehicle, drew their service revolvers, and verbally identified themselves as Seattle police officers. The uniformed officer heard the plainclothed officers identify themselves very loudly. He and one of the plainclothed officers approached the driver's side of the Maxima. The plainclothed officer ordered Hudson out of the car. Hudson exited, looked at her, and looked at the uniformed officer. They both had a "minor hand hold" on him at the time. Suddenly, Hudson fled.

A fourth officer, who was in the area with a police dog, yelled at Hudson to stop and threatened to release the dog. When Hudson continued running, the dog chased him into some bushes. Hudson evaded the dog, jumped two fences, and ran to Roosevelt High School, where he apparently was apprehended minutes later.

At trial, the State excused a witness pursuant to a defense stipulation that the car belonged to Distribution Auto Services (DAS) and that DAS never gave Hudson permission to drive it. Hudson did not testify. The court found him guilty of obstructing a public servant in violation

of RCW 9A.76.020(3) and of taking a motor vehicle without permission in violation of RCW 9A.56.070.

On this appeal, Hudson challenges the sufficiency of the evidence on both counts. He assigns error to four findings: (1) that the officers identified themselves as police officers; (2) that his flight evidenced a consciousness that he did not have permission to drive the car; (3) that his flight hindered and delayed the police in the performance of their official duties; and (4) that he drove the car with knowledge it was stolen. The first finding is supported by the record, and the second and fourth are permissible inferences. *See State v. Baxter,* 68 Wn.2d 416, 421, 413 P.2d 638 (1966) ("[f]light is circumstantial evidence of guilt"). The third finding accords with common usage and authority, as discussed below.

### TAKING A MOTOR VEHICLE WITHOUT PERMISSION

 Every person who shall without the permission of the owner or person entitled to the possession thereof intentionally take or drive away any automobile or motor vehicle . . . shall be deemed guilty of a felony, and every person voluntarily riding in . . . said automobile or motor vehicle with knowledge of the fact that the same was unlawfully taken shall be equally guilty with the person taking or driving said automobile or motor vehicle . . . ..

RCW 9A.56.070. Hudson argues that, to prove an unlawful taking within the meaning of the "joy–riding" statute, the State must show the car "was intentionally taken from and without permission of the person entitled to its possession at the time of the taking." *State v. Nelson,* 63 Wn.2d 188, 191, 386 P.2d 142 (1963). The State established this in *Nelson,* he contends, because it proved that another person had both "custody and possession of the automobile *at the time of its taking"* and the defendant did not have permission from this person. (Italics ours.) *Nelson,* at 191. The quoted language is unartful to the extent it suggests a defendant may be convicted only if he takes a vehicle directly from the owner or other person entitled to possession of the car. The State has no such burden under the statute defining the offense. *See* RCW 9A.56.070. A person

is just as guilty when, without permission, he drives a vehicle belonging to another after it has been taken by someone else, as he is when he personally takes the vehicle directly from the rightful owner or possessor. *See State v. Medley,* 11 Wn. App. 491, 496, 524 P.2d 466 (1974). In other words, the presence of an intervening taker is immaterial. *See State v. Jamerson,* 74 Wn.2d 146, 150, 443 P.2d 654 (1968).

> It is only necessary to show that the automobile did not belong to the appropriator and that it was intentionally taken without permission of the person entitled to possession at the time of the taking; ownership, right to possession or permission to use may be asserted as an affirmative defense.

*State v. Solomon,* 5 Wn. App. 412, 421, 487 P.2d 643 (1971); *see Jamerson,* at 150; *Nelson,* at 191. The State need only prove that the vehicle belonged to another and that the defendant intentionally used it without permission. *See* RCW 9A.56.070.

Here, it was stipulated that the vehicle belonged to Distribution Auto Services and that DAS never gave Hudson permission to drive it. This established an unlawful taking: the taker was Hudson. It was not necessary to prove the Maxima was taken *from* DAS. Whether DAS had rented or leased the car to someone else is also irrelevant. DAS had not rented or leased the car *to Hudson,* and Hudson presented no evidence of a bailee or lessee, let alone permission from an alleged bailee or lessee, or other person entitled to possession. There could be no reasonable doubt that anyone other than DAS was entitled to possession. Whether the Maxima was reported missing is beside the point. Absence of a missing vehicle report might support an inference of permissive use, but it does not require the trier of fact to disbelieve testimony from the owner or other rightful possessor that the defendant never had permission to use the car.

■ Hudson contends there is no evidence that he *knew* the vehicle was stolen. This argument is based on a false premise: that the State had to prove the car was stolen. We need only conclude DAS owned the car, and that Hudson

knowingly drove it without permission. *See* RCW 9A.56-.070. A person knows of a fact by being aware of it or having information which would lead a reasonable person to conclude the fact exists. RCW 9A.08.010(1)(b). The fact in question is lack of permission, and a reasonable person would believe he or she lacked permission in the circumstances.

> No testimony or evidence was given at the trial from which it could reasonably be concluded or inferred that the appellant had permission from anyone, let alone the owner or a person entitled to possession, to use the car. The undisputed evidence in the case indicated that the automobile did not belong to the appellant and that he intentionally drove it without permission of the true owner or one entitled to possession. . . . [A]ppellant did not claim ownership, right to possession or permission to use the automobile.

*Jamerson,* 74 Wn.2d at 147.

> Although he denied participation in the original taking, he did admit the subsequent taking of the car from the street without asking anyone where it came from. Nor did he offer any explanation from which anyone could conclude or infer his right to possession of the car or permission to use the same. We stated in *State v. Nelson, supra,* at 191 that "[o]wnership, right to possession, or permission to use by the accused may be asserted as a defense." In the present case, no such assertion was made by anyone.
>
> The facts of this case, if accepted as true, suggest but one inference—that of guilt. They admit of no reasonable hypothesis or theory of innocence . . ..

*Jamerson,* at 150. The absence of any explanation for Hudson's use of what appears to have been a recently stolen automobile (the Maxima had less than 1,500 miles on it) and his flight provide ample evidence from which to infer guilty knowledge.[1]

---

[1]Possession of recently stolen property plus "slight corroborative evidence" is sufficient evidence of guilty knowledge. *See State v. Couet,* 71 Wn.2d 773, 776, 430 P.2d 974 (1967). Absence of any explanation, let alone a plausible one, is a corroborating circumstance. *See State v. Jamerson, supra; see also State v. Ford,* 33 Wn. App. 788, 790, 658 P.2d 36 (1983). Flight, too, is a sufficient corroborating circumstance. *See State v. Medley,* 11 Wn. App. at 495.

### Flight From Police as Hindrance or Delay of a Public Servant

"Every person who . . . shall knowingly hinder, delay, or obstruct any public servant in the discharge of his official powers or duties . . . shall be guilty of a misdemeanor." RCW 9A.76.020(3). Hudson seizes on the absence of a direct finding that, when he ran, he knew he was running from a police officer discharging official duties. The trial court found that a uniformed officer pulled alongside Hudson in a marked patrol unit and that the undercover officers identified themselves as police officers before he fled. There was no evidence that Hudson was unconscious, insane, delusional, or otherwise incapable of cognition. Thus, a direct finding that he knew he was running from a police officer in the performance of official duties was unnecessary.

■ Hudson also stresses the absence of a finding that he *intentionally* hindered or delayed the officers. However, intent to hinder, delay, or obstruct is not a statutory element of the crime.[2] *See* RCW 9A.76.020(3); *State v. Bower,* 28 Wn. App. 704, 710, 626 P.2d 39 (1981). Nor was it an element of the crime as previously defined. *See State v. Bandy,* 164 Wash. 216, 219, 2 P.2d 748 (1931).

■■ Hudson contends the officers were not performing official duties because they exceeded the scope of a valid investigative stop. Specifically, he maintains the use of drawn guns transformed the stop into an illegal arrest, because the officers lacked probable cause to arrest when they drew their guns. We disagree. We conclude the officers were performing official duties because there is no evidence they were acting in bad faith. "An agent, even if effecting

---

[2]Hudson relies on dictum equating knowingly obstructing with intentionally obstructing. *See State v. CLR,* 40 Wn. App. 839, 842, 700 P.2d 1195 (1985) (obstruction statute requires "that the action or inaction be done knowingly by the obstructor, *i.e.,* with intent to hinder"). As dictum, the statement in *CLR* is not stare decisis. Moreover, *CLR* cites as sole authority a Maryland case which had no occasion to address RCW 9A.76.020(3) or any similar statute. Finally, the suggestion in *CLR* that intent and knowledge are identical is contrary to statute. *See* RCW 9A.08.010(1)(a); *State v. Rinier,* 93 Wn.2d 309, 313, 609 P.2d 1358 (1980).

an arrest without probable cause, is still engaged in the performance of his official duties, provided he is not on a 'frolic of his own'". *United States v. Martinez,* 465 F.2d 79, 82 (2d Cir. 1972); *see People v. Carroll,* 133 Ill. App. 2d 78, 272 N.E.2d 822 (1971). The three officers who stopped Hudson were not on a frolic of their own because they were acting in good faith. The use of drawn guns is appropriate whenever police have a reasonable apprehension of fear. *See State v. Belieu,* 112 Wn.2d 587, 773 P.2d 46 (1989). "'A founded suspicion is all that is necessary, *some basis from which the court can determine that the detention was not arbitrary or harassing.'" Belieu,* at 601–02, quoting *Wilson v. Porter,* 361 F.2d 412, 415 (9th Cir. 1966). On the record before us, which is scant because Hudson never challenged the use of drawn guns at trial, we are unable to say the use of drawn guns was arbitrary or harassing. Driving a stolen vehicle is often associated with serious criminal activity. Three persons in a car believed to be stolen pose a much greater reason for fear than a single individual stopped for a simple traffic infraction. In the latter case, the driver may be ordered out of the car as a matter of course to prevent a surprise attack. *Belieu,* at 594–95.

■ An early case in this jurisdiction assumed that flight violated the predecessor of RCW 9A.76.020(3). *See Hamblet v. Mutual Union Ins. Co.,* 120 Wash. 31, 33–35, 206 P. 836 (1922). Hudson cites a case to the contrary. *See Jones v. Commonwealth,* 141 Va. 471, 126 S.E. 74 (1925). *Jones* is unconvincing because it ignores the fact that flight "hinders" proper police conduct, as it did in that case, and as it did here. *Jones* has not been followed. *See* Annot., *What Constitutes Obstructing or Resisting an Officer, in the Absence of Actual Force,* 44 A.L.R.3d 1018, 1053 (1972). The established rule is that flight constitutes obstructing, hindering, or delaying within the meaning of statutes comparable to RCW 9A.76.020(3). Annot., *supra* at 1053.

■ Hudson relies on *Jones* for his argument that RCW 9A.76.020(3) is unconstitutionally vague. He states: "Running away or retreating from a person is not customarily

considered a hindrance or cause for delay." We disagree. Hudson hindered and delayed an investigation and his arrest.[3] Hudson confuses nonaggressive behavior which hinders, delays, or obstructs with assaultive conduct having the same effect. The latter situation constitutes assault in the third degree, a felony. *See* RCW 9A.36.031(1)(a). "Just because one might 'hinder, delay, or obstruct' a police officer by committing assault does not mean that the elements of the two offenses are congruent." *State v. Garcia,* 20 Wn. App. 401, 404, 579 P.2d 1034 (1978).

Because flight from a police officer attempting in good faith to detain a suspect is within the common understanding of hindrance or delay of a public servant discharging official duties, Hudson's vagueness challenge is without merit.

> RCW 9A.76.020(3) is sufficiently specific to inform a person of ordinary intelligence that it is a misdemeanor to knowingly engage in conduct which hinders, delays, or obstructs *a uniformed police officer when that officer is attempting to effect an arrest.* The impact of the statute could be understood by the average person. RCW 9A.76.020(3) is not unconstitutionally vague as applied in this case.

(Italics ours. Citation omitted.) *State v. Lalonde,* 35 Wn. App. 54, 60, 665 P.2d 421 (1983); *see State v. Grant,* 89 Wn.2d 678, 685–86, 575 P.2d 210 (1978) (upholding former statute against vagueness challenge); *see also State v. White,* 97 Wn.2d 92, 96, 640 P.2d 1061 (1982) (approving *Grant* while simultaneously invalidating RCW 9A.76-.020(1), (2)).

---

[3]"Hinder" means "to make slow or difficult the course or progress of : RETARD, HAMPER . . . to keep from occurring, starting, or continuing : hold back : PREVENT, CHECK . . . to interfere with the activity of . . . to delay, impede, or prevent action : be a hindrance". *Webster's Third New International Dictionary of the English Language* 1070 (1969). "Delay" means "to stop, detain, or hinder for a time : check the motion of, lessen the progress of, or slow the time of arrival of . . . to cause to be slower or to occur more slowly than normal : RETARD". *Webster's,* at 595.

We affirm.

GROSSE, A.C.J., and FORREST, J., concur.

Review denied at 114 Wn.2d 1016 (1990).