[Nos. 55461-1-I; 55660-6-I;     Division One.     February 13, 2006.]
55462-0-I; 55519-7-I;
55595-2-I.

THE CITY OF SEATTLE, *Respondent*, v. LISA K. HAMMON, *Petitioner*.

THE CITY OF SEATTLE, *Respondent*, v. LYLE COURTSAL, *Petitioner*.

THE CITY OF SEATTLE, *Respondent*, v. SEYOUM BEYENE, *Petitioner*.

THE CITY OF SEATTLE, *Respondent*, v. EDWARD BRYANT, *Petitioner*.

*Christine A. Jackson* (of *The Public Defender*), for petitioners.

*Thomas A. Carr, Prosecuting Attorney,* and *Moses F. Garcia, Deputy,* for respondent.

¶1 COLEMAN, J. — The consolidated appellants argue that the city of Seattle (City) is not entitled to recoup the cost of appellate counsel because the authorizing statute only specifies that costs incurred *by the state* may be recouped. We interpret RCW 10.73.160's use of the term "state" to include political subdivisions of the state, such as the City.

¶2 Lyle Courtsal individually argues that the city prosecutor's discretion to charge him with obstruction under either the Seattle Municipal Code (SMC) or the Revised Code of Washington violates the rules of statutory interpretation and the separation of powers doctrine. We conclude that the prosecutor's broad charging discretion covers this charging decision, without violating either the general and specific rule or the separation of powers doctrine.

## FACTS

¶3 Each of the four appellants here (collectively referred to as Hammon) unsuccessfully appealed their Seattle Municipal Court convictions to King County Superior Court. Hammon was represented on appeal by appointed counsel from The Defender Association (TDA). Over Hammon's objection, the superior court awarded the city attorney fee costs under RCW 10.73.160 after reviewing TDA's contract with King County's Office of the Public Defender (OPD).

### Recoupment of Fees

¶4 On behalf of the City, OPD contracts with public defense agencies, including TDA, to provide representation for a certain number of case credits per year, for a fixed cost. If the number of case credits an agency provides in a given year is less than 95 percent of the preset amount, the agency has to reimburse the county. If the credit number

provided is between 95 to 100 percent of the amount, no reimbursement to the county is required. Each appellant was represented by an attorney from TDA, whose contract assigns four case credits per misdemeanor appeal. The appeals at issue here were each assigned four case credits; during the years at issue, TDA's credits were between 95 to 100 percent of the preset amount, resulting in no marginal cost to TDA due to these appeals. Hammon sought discretionary review of the cost bills, and this court granted review.

## Obstruction

¶5 While police officers handled an assault disturbance, Courtsal observed the crime scene, yelling toward the suspects, and appearing to videotape the action. A police officer told Courtsal to leave the crime scene, but Courtsal told her that "it's a free country" and he did not have to leave. The officer reiterated that he was at a crime scene and needed to leave. Courtsal refused, saying he needed to be in this area to get to his home, but he refused to tell the officer where he lived or to leave the crime scene.

¶6 When the officer stopped Courtsal, he pretended to videotape her and again refused to leave the crime scene. She removed her grip on Courtsal's elbow, and he ran farther into the crime scene. After repeated commands to exit the crime scene, Courtsal was arrested. He was convicted of obstruction under the Revised Code of Washington in Seattle Municipal Court, and the conviction was affirmed by the King County Superior Court.

## ANALYSIS

## Recoupment

¶7 Hammon argues that only the State, and not the City, is authorized by statute to recoup costs of appointed counsel on appeal. The City acknowledges that the authorizing statute uses the term "state" but claims that this term has

been and should be interpreted to include political subdivisions of the State, including cities.

¶8 "Attorney fees are recoverable only when authorized by a private agreement of the parties, by statute or a recognized ground of equity." *State v. Keeney*, 112 Wn.2d 140, 142, 769 P.2d 295 (1989). RCW 10.73.160(2) authorizes the State to recoup the costs of appointed appellate counsel: "Appellate costs are limited to expenses *specifically incurred by the state* in prosecuting or defending an appeal or collateral attack from a criminal conviction or sentence or a juvenile offender conviction or disposition." (Emphasis added.)

¶9 Hammon is correct that no Washington court has ever addressed whether this particular statute's use of the term "state" includes political subdivisions of the State, but courts have interpreted other statutes and court rules using the term to include subdivisions. In *County of Spokane v. Gifford*, 9 Wn. App. 541, 513 P.2d 301 (1973), the defendant challenged the county's authority to appeal under a former court rule authorizing only the "state" to appeal. The *Gifford* court found that "[i]t would be an anomaly to allow the state a right of appeal in certain cases, but deny the same right to its political subdivision whose life and authority derive from the state." *Gifford*, 9 Wn. App. at 543.

¶10 Likewise, in *State v. Durham*, 87 Wn.2d 206, 550 P.2d 685 (1976), the court found that a criminal rule authorizing appointed counsel provided at "the state's expense" did not indicate that the source of funds was necessarily the State of Washington itself. "The reference to the 'state' is not, however, determinative of whether county or state funds are the source of payment of petitioners' claims for costs. The state is referred to only in the generic sense. The term 'state' is all-inclusive as used in the rules and embraces not only the state but its political subdivisions." *Durham*, 87 Wn.2d at 211. *See also State v. Agren*, 32 Wn. App. 827, 830, 650 P.2d 238 (1982) ("We interpret the reference to 'state' as use of a generic term which would

encompass the County, a political subdivision of the State.").

¶11 Hammon relies on *City of Seattle v. Fontanilla*, 128 Wn.2d 492, 909 P.2d 1294 (1996), to argue that because the legislature could have included subdivisions but did not, the legislature must have intended to refer only to the State in RCW 10.73.160(2). In *Fontanilla*, however, the court was interpreting a statute using the phrase "state of Washington." The *Fontanilla* court found "state of Washington" to be more specific than "state," which it considered synonymous with "the government." *Fontanilla*, 128 Wn.2d at 504. Because the statute here uses the term "state," *Fontanilla* does not support Hammon's position. While it is true that some court rules (see, for example, RAP 2.2 and RALJ 2.2) use the phrase "State or local government," the absence of that phrase does not assist this court in determining what the legislature intended "state" to mean here.

¶12 Because Hammon has not distinguished this statute from other statutes using the term "state" that have been interpreted to refer to the government generically, we conclude that RCW 10.73.160 authorizes the City, as a subdivision of the State, to recoup its costs.

■ ■ ¶13 Hammon argues that even if the City is authorized to recoup costs, no costs were actually incurred in these appeals because the defense agency was within its variance during the years at issue here. The superior court found that the TDA contract supported the City's cost bill, and we affirm this finding because it is supported by substantial evidence. "Findings of fact supported by substantial evidence are verities on appeal. 'Substantial evidence is evidence in sufficient quantum to persuade a fair-minded person of the truth of the declared premise.'" *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 819, 828 P.2d 549 (1992) (citation omitted) (quoting *Robinson v. Safeway Stores, Inc.*, 113 Wn.2d 154, 157, 776 P.2d 676 (1989)).

¶14 Section IV of the TDA contract explains how the agency will be paid by the county: TDA is allocated a lump

amount (based on the number of case credits each division of TDA is given). It is clear that each case credit is assigned a particular value under the contract, supporting the City's cost calculation for each four-credit appeal here ($402.99 per credit in 2003). Because this interpretation of the TDA contract, followed by the court in each of these cases, is supported by language in the contract itself, we affirm the cost award.

¶15 Hammon also argues that because some indigent defendants sign promissory notes to pay back their attorney fees, the City is not actually expending money on the appeals. We conclude, however, that the fact that a defendant may agree to pay his costs does not affect the trial court's ability to award costs to the City—how the City recoups those costs is irrelevant.

*Obstruction*

¶16 Courtsal argues that there are two reasons why the city prosecutor should be required to charge obstruction under the more specific city ordinance rather than the state statute. First, under the general and specific rule of statutory construction, the city prosecutor is required to charge under the city obstruction ordinance, SMC 12A.16.010, rather than the state obstruction law, RCW 9A-.76.020. Second, with discretion to choose to charge under either obstruction law, the city prosecutor could essentially repeal the city ordinance by charging only under the state law, giving the prosecutor a legislative function that would violate the separation of powers doctrine.

¶17 The general and specific rule of statutory interpretation states that when a legislative body creates a specific law as a subset of a general law, the legislature intended that persons who commit the more specific act should be punished under the specific law or not at all. *State v. Shriner*, 101 Wn.2d 576, 583, 681 P.2d 237 (1984). Where two separate legislative bodies, however, create overlapping but not conflicting laws to address the same

issue, the legislative intent supporting the general and specific rule is not applicable. *See City of Seattle v. Barrett*, 58 Wn. App. 698, 794 P.2d 862 (1990). The two obstruction laws here were created by separate legislative bodies and, thus, we need not apply general and specific analysis here because there was no legislative intent that these laws interact hierarchically.

¶18 Courtsal agrees that the City has the authority to create municipal laws that address the same issue but do not conflict with a state law. But he argues here that the city prosecutor has unfettered discretion to choose to charge under the state law rather than the more specific city ordinance. Because the city prosecutor would presumably always elect to charge under a more general statute, Courtsal argues that the prosecutor's discretion would potentially usurp legislative power—essentially allowing the prosecutor to repeal the more specific law.

¶19 Prosecutorial discretion extends to the selection of which applicable statute will form the basis of a charge. *United States v. Batchelder*, 442 U.S. 114, 99 S. Ct. 2198, 60 L. Ed. 2d 755 (1979). This discretion is bounded by constitutional constraints: a prosecutor cannot selectively enforce in violation of the equal protection or due process clauses. *Batchelder*, 442 U.S. at 124-25. The *Batchelder* Court found that "[j]ust as a defendant has no constitutional right to elect which of two applicable federal statutes shall be the basis of his indictment and prosecution, neither is he entitled to choose the penalty scheme under which he will be sentenced." *Batchelder*, 442 U.S. at 125. Because both the city and state obstruction laws applied to Courtsal's conduct here, we follow the *Batchelder* reasoning to conclude that it was within the prosecutor's discretion to elect to charge Courtsal under either obstruction law.

¶20 Courtsal emphasizes that the city ordinance provides a defense that is not provided under the state statute, in an attempt to show that he was deprived of a defense as a result of the prosecutor's exercise of discretion. The city

ordinance does specifically state that a charge of obstruction must be supported by officers "acting lawfully in a governmental function," thus providing a defense that officers were not acting lawfully. SMC 12A.16.010(B). The state statute requires that the officers obstructed must be discharging "official powers or duties." RCW 9A.76.020(1). The state statute has been interpreted to include a defense if the officer was acting in bad faith (*see State v. Hudson*, 56 Wn. App. 490, 784 P.2d 533 (1990)), but that defense is arguably narrower than the city ordinance defense.

¶21 The fact that the city ordinance contains a defense that may not be available under the state statute does not establish that one law was intended to supersede another— Courtsal has merely demonstrated that the two laws may be different. But there is no "appreciable difference between the discretion a prosecutor exercises when deciding whether to charge under one of two statutes with different elements and the discretion exercised when choosing one of two statutes with identical elements." *City of Kennewick v. Fountain*, 116 Wn.2d 189, 193, 802 P.2d 1371 (1991). Even if two laws have different elements, a prosecutor still enjoys broad discretion to charge under either applicable law if the evidence exists to support the charge. Because we conclude that the city prosecutor had discretion to charge Courtsal with obstruction under either law, the existence of this defense is irrelevant.

¶22 Affirmed.

BAKER and DWYER, JJ., concur.

Review denied at 158 Wn.2d 1017 (2006).