[No. 55910-9-I. Division One. May 1, 2006.]

THE STATE OF WASHINGTON, *Respondent*, v. RAYMOND GUERRA GONZALES, *Appellant*.

*Raymond Gonzales*, pro se.

*David B. Koch* (of *Nielsen, Broman & Koch, P.L.L.C.*), for appellant.

*Janice E. Ellis, Prosecuting Attorney*, and *Thomas M. Curtis, Deputy*, for respondent.

¶1 BAKER, J. — Raymond Guerra Gonzales argues that the evidence was insufficient to support his conviction for first degree taking a motor vehicle without permission because the State failed to prove that he was the individual that took or drove away the stolen vehicle and exchanged the license plates with those of another car. He also argues that he was denied his right to jury unanimity on his second degree burglary conviction because the jury was instructed on two means of committing the crime which are repugnant to each other. We disagree and affirm the convictions.

I

¶2 At about 8 AM on September 4, 2004, a Washington State Patrol trooper spotted a Dodge Neon traveling on Interstate 5 at 101 miles per hour. The trooper activated his emergency lights and siren and instructed the Neon to pull over. The Neon pulled over briefly but suddenly sped away again. The trooper pursued the Neon at high speeds for approximately two and a half minutes before losing sight of it. He called in the make, model, color, and license plate to dispatch. Sheriff's deputies located the Neon and resumed the pursuit. Eventually, the Neon was stopped. Raymond Gonzales was the driver, and Kevin Larson was the passenger. The Neon contained a destroyed ignition, a screwdriver that had been used in place of a key, and some brand new merchandise that was later identified as belonging to Schuck's Auto Supply. The Neon's license plate number was 796 RMP.

¶3 A sheriff's deputy contacted the registered owner of the car to which license plate 796 RMP had been issued and asked if his car had been stolen. The owner looked out the window and confirmed that his Dodge Neon had not been stolen, but he was surprised to discover that the license plates had been switched.

¶4 Police then traced the Neon driven by Gonzales to its owner, Kerri Osmulski. The vehicle had been reported stolen on September 1, 2004.

¶5 Meanwhile, at about 6 AM on the morning of Gonzales's arrest, the assistant manager of Schuck's Auto Supply in Lynnwood received a call that the store's alarm system had been activated. He arrived at the store and found that the front door had been rammed in by a vehicle. A surveillance video camera showed two men in the store for 30 to 45 seconds. They were wearing clothing that matched the clothing of Gonzales and Larson when they were arrested.

¶6 Larson pleaded guilty to burglarizing the Schuck's store, ditching the car used in that crime, and transferring the stolen Schuck's merchandise into Osmulski's Dodge Neon. Larson also stated in a plea agreement that he was with Gonzales at the time they decided to unlawfully enter the Schuck's store with the intent to commit the crime of theft. However, at trial, Larson claimed that he could not recall who he was with during the Schuck's burglary.[1]

¶7 Gonzales was convicted of first degree taking of a motor vehicle without permission and second degree burglary, among other charges. He now appeals.

II

¶8 Gonzales argues that there is insufficient evidence to support his conviction for first degree taking of a motor vehicle without permission because the State failed to prove that he was the person who actually took the

---

[1] Gonzales was convicted of witness tampering based on a letter he sent to Larson in jail.

vehicle from its rightful owner. Although Gonzales frames the issue as one of sufficiency of the evidence, the initial question is one of statutory construction. Prior to 2002, the crime of taking a motor vehicle without permission (TMV or "the joyriding statute") was a class C felony defined as follows:

> Every person who shall without the permission of the owner or person entitled to the possession thereof intentionally take or drive away any automobile or motor vehicle . . . the property of another, shall be deemed guilty of a felony, and every person voluntarily riding in or upon said automobile or motor vehicle with knowledge of the fact that the same was unlawfully taken shall be equally guilty with the person taking or driving said automobile or motor vehicle and shall be deemed guilty of taking a motor vehicle without permission.[2]

¶9 In 2002, the legislature modified the statute, dividing it into two degrees. The new crime of first degree TMV is derived from the first portion of the former statute pertaining to the person who "intentionally takes or drives away" the motor vehicle, plus at least one of five additional factors:

> (1) A person is guilty of taking a motor vehicle without permission in the first degree if he or she, without the permission of the owner or person entitled to possession, intentionally takes or drives away an automobile or motor vehicle . . . that is the property of another, and he or she:
>
> (a) Alters the motor vehicle for the purpose of changing its appearance or primary identification, including obscuring, removing, or changing the manufacturer's serial number or the vehicle's identification number plates;
>
> (b) Removes, or participates in the removal of, parts from the motor vehicle with intent to sell the parts;
>
> (c) Exports, or attempts to export, the motor vehicle across state lines or out of the United States for profit;
>
> (d) Intends to sell the motor vehicle; or

---

[2] Former RCW 9A.56.070(1) (1975).

(e) Is engaged in a conspiracy and the central object of the conspiratorial agreement is the theft of motor vehicles for sale to others for profit.[3]

First degree TMV has been elevated to a class B felony.[4] That portion of the former statute making riders equally guilty with takers/drivers was eliminated from the new first degree TMV statute but remains in the new crime of second degree TMV:

> A person is guilty of taking a motor vehicle without permission in the second degree if he or she, without the permission of the owner or person entitled to possession, intentionally takes or drives away any automobile or motor vehicle . . . that is the property of another, or he or she voluntarily rides in or upon the automobile or motor vehicle with knowledge of the fact that the automobile or motor vehicle was unlawfully taken.[5]

Second degree TMV is a class C felony, the same as the former statute.[6]

¶10 Gonzales argues that under the new first degree TMV statute, the State must now prove that he was the individual who actually took or drove away the vehicle in the first instance. Relying on *State v. Womble*,[7] Gonzales contends that the "taking or driving away" requirement now applies only to the initial taker. Gonzales is mistaken. Under the former statute, it was not necessary to prove that the defendant took the vehicle directly from the owner or other person entitled to possession.[8] The presence of an intervening taker was immaterial.[9] The State only needed to prove that the vehicle belonged to another and that the

---

[3] RCW 9A.56.070(1).

[4] RCW 9A.56.070(1), (2).

[5] RCW 9A.56.075(1).

[6] RCW 9A.56.075(2).

[7] 93 Wn. App. 599, 969 P.2d 1097 (1999).

[8] *State v. Hudson*, 56 Wn. App. 490, 493-94, 784 P.2d 533 (1990) (citing *State v. Medley*, 11 Wn. App. 491, 496, 524 P.2d 466 (1974)).

[9] *Hudson*, 56 Wn. App. at 494.

defendant intentionally used it without permission.[10] The new first degree TMV statute contains the identical "takes or drives away" language as the former statute. Splitting the former statute into two degrees does nothing to change well-settled law interpreting it. The new statutory scheme distinguishes between persons who "intentionally take or drive away" and persons who "ride," not between initial and subsequent takers or drivers. Nor does *Womble* provide any support for Gonzales's interpretation. In *Womble*, we held that the phrase "taking or driving away" imposes no minimum distance requirement to obtain a conviction.[11] The clear legislative intent is to reduce the incidence of this crime by increasing the penalty for those who take or drive a car in addition to committing at least one of five additional prohibited acts.[12] The statute is clear and unambiguous on its face, and judicial construction or interpretation is unnecessary.[13]

¶11 Therefore, the State need prove only that the vehicle belonged to another and that Gonzales intentionally used it without permission, plus the additional factor of exchanging the license plates. "Evidence is sufficient to support a conviction if, when viewed in the light most favorable to the prosecution, any rational jury could find the essential elements of the crime beyond a reasonable doubt."[14] A claim of insufficiency admits the truth of the State's evidence and all reasonable inferences that can be drawn from that evidence.[15]

¶12 There is ample evidence to support Gonzales's conviction. Gonzales was driving the car when he was appre-

---

[10] *Hudson*, 56 Wn. App. at 494.

[11] *Womble*, 93 Wn. App. at 603.

[12] LAWS OF 2002 ch. 324, § 4.

[13] *State v. Goodrich*, 47 Wn. App. 114, 116, 733 P.2d 1000 (1987) (quoting *State v. Eilts*, 94 Wn.2d 489, 493, 617 P.2d 993 (1980)).

[14] *Womble*, 93 Wn. App. at 602.

[15] *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992).

hended after fleeing from the police. He offered no explanation from which a jury could infer that he had permission to use the vehicle. There was evidence that the license plates had been very recently switched with another car of the same make, model, and color, much to the owner's surprise. It is undisputed that Gonzales was driving the car without the owner's permission.

¶13 Gonzales also challenges his conviction for second degree burglary. There are two alternative means to commit burglary: unlawfully entering a building with intent to commit a crime or unlawfully remaining in a building with intent to commit a crime.[16] When a crime can be committed by alternative means, express jury unanimity as to the means is not required where each of the means is supported by substantial evidence and the means are not repugnant to one another.[17] If the evidence is insufficient to support both means, either the prosecutor must elect the means supported by the evidence or the court must instruct the jury to rely on that means during deliberations.[18] Gonzales, relying on *State v. Klimes*,[19] argues that his right to a unanimous jury was violated because a defendant who unlawfully enters a building cannot also unlawfully remain, yet the jury was instructed on both alternative means and the prosecutor did not elect unlawful entry. In *Klimes*, we held that unlawful entry and unlawful means are repugnant to one another.[20] However, in *State v. Allen*,[21] we retreated from *Klimes* to the extent that it held that entering and remaining unlawfully are necessarily repugnant.[22] *Allen* was correctly decided.[23] Therefore, the

---

[16] *State v. Klimes*, 117 Wn. App. 758, 765, 73 P.3d 416 (2003).

[17] *State v. Whitney*, 108 Wn.2d 506, 508, 739 P.2d 1150 (1987).

[18] *State v. Kitchen*, 110 Wn.2d 403, 409, 756 P.2d 105 (1988).

[19] 117 Wn. App. 758, 73 P.3d 416 (2003).

[20] *Klimes*, 117 Wn. App. at 760.

[21] 127 Wn. App. 125, 110 P.3d 849 (2005).

[22] *Allen*, 127 Wn. App. at 127.

[23] Our Supreme Court recently denied two petitions for review filed by defendants raising the question of which decision is correct. *State v. Howard*,

proper inquiry is whether each of the alternative means was supported by substantial evidence. This standard has clearly been met. The evidence showed that a vehicle was used to break down the front door of the Schuck's store, and the surveillance videotape showed two men later identified as Gonzales and Larson remaining inside for up to 45 seconds. Items stolen from Schuck's were later found in the car with Gonzales and Larson.

¶14 Affirmed.

GROSSE and BECKER, JJ., concur.

Review denied at 159 Wn.2d 1010 (2007).

noted at 156 Wn.2d 1014 (2006), petition for review denied January 31, 2006; *State v. Gash*, noted at 156 Wn.2d 1022 (2006), petition for review denied March 10, 2006.