# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | NO. 71415-5-I |
| | ) | |
| Respondent/Cross-Appellant, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | |
| JASON ALLAN WILLIAMS, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant/Cross-Respondent. | ) | FILED: June 15, 2015 |
| | ) | |

LAU, J. — Jason Williams was convicted of one count of residential burglary. He argues his conviction should be reversed because (1) the State failed to present sufficient evidence proving Williams committed or intended to commit the underlying crime of assault, and (2) the trial court abused its discretion when it denied Williams' motion for a bill of particulars. Because the particular crime intended to be committed inside the premises is not an element of burglary and the lack of a bill of particulars caused no unfair prejudice, we affirm the judgment and sentence.

## FACTS

On January 25, 2013, Jason Williams broke into Nicholas Spencer-Berger's house. Spencer-Berger was watching a movie in his bedroom with his wife while their two daughters were asleep in the next room. After he heard noises coming from

downstairs, he called 911 assuming someone was in the house. When Spencer-Berger left his bedroom, he saw Williams standing nearby at the top of the stairs. Spencer-Berger yelled at Williams to leave, but Williams remained. Williams was "saying things that made no sense." Report of Proceedings (RP) (Nov. 13, 2013) at 10. For example, Williams claimed that Spencer-Berger had been following him, and he continued demanding that Spencer-Berger give him his keys. But Spencer-Berger had never met or even seen Williams before. At some point, Spencer-Berger managed to get Williams downstairs. Spencer-Berger struck Williams and detained him on the ground. Shortly after, police arrived and detained Williams. Spencer-Berger later found that Williams had entered the house by throwing a wooden stump through a window in the garage, and that Williams had emptied the glove box in Spencer-Berger's car.

On February 1, the State charged Williams by information with one count of residential burglary under RCW 9A.52.025. On November 12, Williams moved for a bill of particulars, requesting that the State specify which crimes it believed Williams intended to commit when he entered Spencer-Berger's house. In response, the State indicated four crimes it believed Williams intended to commit: assault, disorderly conduct, theft, and robbery. The court denied Williams' motion for a bill of particulars. At trial, the prosecutor suggested that the facts supported an inference that Williams intended to commit either assault or theft. The trial court also included in the jury instructions the definitions for assault and theft. A jury convicted Williams as charged. The court sentenced Williams to 43 months of confinement. Williams appeals.

## ANALYSIS

### Theft and Assault Jury Instructions

Williams contends that by instructing the jury on the definition of theft and assault, the State effectively added these crimes as necessary elements. Therefore, it was required to prove that he intended "to attempt to or to commit" both theft and assault. Br. of Appellant at 8. Because the State failed to prove assault or attempted assault,[1] Williams asserts his conviction is unsupported by sufficient evidence and must be reversed. We disagree.

Residential burglary occurs when a person unlawfully enters a dwelling with the intent to commit a crime. RCW 9A.52.025(1) ("A person is guilty of residential burglary if, with intent to commit a crime against a person or property therein, the person enters or remains unlawfully in a dwelling other than a vehicle."). But the State need not prove the specific crime intended to be committed. State v. Bergeron, 105 Wn.2d 1, 16, 711 P.2d 1000 (1985) ("the specific crime or crimes intended to be committed inside burglarized premises is not an element of burglary that must be included in the information, jury instructions or in the trial court's findings and conclusions. It is sufficient if the jury is instructed . . . in the language of the burglary statutes."). The trial court is not precluded from instructing the jury on the specific underlying crime, and it is sometimes "the better practice" to do so. See State v. Chelly, 32 Wn. App. 916, 920, 651 P.2d 759 (1982). Here, the State proposed and the trial court included the

---

[1] Williams does not dispute the sufficiency of the evidence to prove the intent to commit theft.

definitional instructions for theft and assault. The State was not required to prove that Williams committed or intended to commit theft or assault. Bergeron, 105 Wn.2d at 16.

Williams argues that under the law of the case doctrine, the State added these crimes as elements when it failed to object to the inclusion of the theft and assault instructions. Although Williams correctly asserts that jury instructions not objected to become the law of the case, typically the State assumes the burden of proving otherwise unnecessary elements only when those elements are incorporated in the "to convict" instruction. See State v. Hickman, 135 Wn.2d 97, 102, 954 P.2d 900 (1998) ("Under the doctrine jury instructions not objected to become the law of the case . . . . In criminal cases, the State assumes the burden of proving otherwise unnecessary elements of the offense when such added elements are included without objection in the 'to convict' instruction.") (citations omitted). The "to convict" instruction here did not require the jury to find that Williams committed or intended to commit either theft or assault:

> To convict the defendant of the crime of residential burglary, each of the following elements of the crime must be proved beyond a reasonable doubt:
>
> (1) That on or about the 25th day of January, 2013, the defendant entered or remained unlawfully in a dwelling;
>
> (2) That the entering or remaining was with intent to commit a crime against a person or property therein; and
>
> (3) That the acts occurred in the State of Washington.
>
> If you find from the evidence that each of these elements has been proved beyond a reasonable doubt, then it will be your duty to return a verdict of guilty.

On the other hand, if, after weighing all of the evidence you have a reasonable doubt as to any one of these elements, then it will be your duty to return a verdict of not guilty.

Clerk's Papers (CP) at 51. The "to convict" instruction only required the jury to conclude that Williams intended to commit "a crime." CP at 51. The law of the case doctrine does not apply here. Therefore, the State was not required to prove theft and assault.

Williams notes that we have stated the law of the case doctrine can apply to definitional instructions in addition to "to convict" instructions. See State v. Calvin, 176 Wn. App. 1, 21, 316 P.3d 496 (2013) ("Although the State argues that the law of the case doctrine applies only when an element is added to a to-convict instruction, the doctrine is not limited to that application. It is a broad doctrine that has been applied to a to-convict instructions and definitional instructions.")[2] But the unique circumstances in Calvin render that case inapplicable here. In Calvin, the defendant was charged with assault in the third degree and resisting arrest. The trial court initially provided an instruction defining assault using the phrase "unlawful force":

"An assault is an act, with unlawful force, done with the intent to create in another apprehension and fear of bodily injury . . . ."

Calvin, 176 Wn. App. at 20. The jury was confused about the term and asked the trial court how to define "unlawful force." Calvin, 176 Wn. App. at 20. The trial court decided to provide a supplemental instruction without the confounding phrase: "An assault is an act done with the intent to create in another apprehension and fear of bodily injury . . . ." Calvin, 176 Wn. App. at 21. Calvin argued that, under the law of the

---

[2] The remaining cases Williams cites involve civil lawsuits and are inapplicable here.

case doctrine, the original instruction containing the phrase "unlawful force" added an element the State was required to prove. Calvin, 176 Wn. App. at 21.

Although we stated in passing that the law of the case doctrine might apply to definitional instructions in addition to "to convict" instructions, this statement is dicta because whether the presence of the phrase "unlawful force" added an element was not directly at issue in the case:

> The [law of the case] doctrine is based on the premise that whether the instruction in question was rightfully or wrongfully given, it was binding and conclusive upon the jury. Thus, a party cannot challenge unobjected to jury instructions for the first time on appeal, or conversely disavow jury instructions on appeal that were acquiesced to below . . . . Here, an objection preserved the issue for review and the jury reached a verdict based on the supplemental instruction [rather than the original instruction containing the phrase "unlawful force"]. Because the trial court has discretion to give supplemental instructions, the issue is not whether the law of the case doctrine bound the State to the "unlawful force" language at the time the jury was given instructions. Rather, our inquiry is whether the trial court abused its discretion when the jury sought further clarification and the trial court identified and corrected a problem.

Calvin, 176 Wn. App. at 22. (citation omitted) (emphasis added). We did not hold in Calvin that a phrase contained in a definitional instruction increased the State's burden by adding an otherwise unnecessary element. Calvin is also distinguishable because the jury instruction at issue there, defined the specific crime with which the defendant was charged. Here, Williams was not charged with assault or theft. The related definitional instructions provided examples of crimes the jury could consider when deciding "the intent to commit a crime against a person or property therein" for burglary. CP at 51. The State was not required to prove them beyond a reasonable doubt.

Nor was this an "alternative means" crime, as Williams suggests. An alternative means crime sets forth "*distinct acts* that amount to the same crime." State v. Peterson,

168 Wn.2d 763, 770, 230 P.3d 588 (2010). "When a crime can be committed by alternative means, express jury unanimity as to the means is not required where each of the means is supported by substantial evidence." State v. Gonzales, 133 Wn. App. 236, 243, 148 P.3d 1046 (2006). "However, if the evidence is insufficient to support each of the means, a particularized expression of jury unanimity is required." State v. Sony, 184 Wn. App. 496, 499, 337 P.3d 397 (2014), review denied, 182 Wn.2d 1019 (2015). Williams argues that the jury was instructed on two alternative means of committing residential burglary—theft and assault. Therefore, because there was insufficient evidence to conclude that Williams committed or intended to commit burglary, and because there was no particularized unanimity instruction indicating the jury agreed that he committed or intended to commit theft, his conviction must be reversed.

But, as we recently concluded in Sony, residential burglary is not an alternative means crime, and it did not become an alternative means crime simply because the trial court provided examples of crimes the jury might have considered Williams intended to commit when he entered Spencer-Berger's house. In Sony, we explained that residential burglary is not an alternative means crime even though it requires that the State prove the defendant entered a dwelling with the intent to commit a crime against a person or property:

> The different intents that may be present—"to commit a crime against a person" or "to commit a crime against property"—are not distinct acts and therefore do not constitute alternative means of committing residential burglary. See [State v. Huynh,] 175 Wn. App. at 905–06, ("An element dealing with a defendant's subjective mental state generally cannot be the subject of an alternative means analysis."). Rather, "[t]he intent required by our burglary statutes is simply the intent to commit any crime against a person or property inside the burglarized premises." State v. Bergeron, 105 Wn.2d 1, 4, 711 P.2d 1000 (1985).

Sony, 184 Wn. App. at 500. Burglary does not present an alternative means crime by requiring a jury to find that the defendant intended to commit a crime against a person or property. By extension, the trial court here did not transform Williams' burglary charge into an alternative means crime by providing examples of "a crime against a person or property therein" that the jury might consider. Therefore, the State did not need to prove that Williams committed or intended to commit either theft or assault, nor did the jury need to unanimously agree that Williams committed or intended to commit either of those crimes. See State v. Smith, 159 Wn.2d 778, 790–91, 154 P.3d 873 (2007). The jury only needed to agree that Williams intended to commit "a crime." CP at 51; Bergeron, 105 Wn.2d at 16.

Because the State was not required to prove that Williams committed or intended to commit theft or assault beyond a reasonable doubt, we need not consider whether sufficient evidence supported those unnecessary elements.

## Bill of Particulars

Williams also argues the trial court erred when it denied his motion for a bill of particulars. We conclude, however, that the trial court did not abuse its discretion when it denied the motion because the State provided sufficient notice of the underlying crimes it intended to present at trial.

"[R]equiring a bill of particulars is discretionary with the trial court and its ruling will not be disturbed absent a showing of abuse of discretion." State v. Noltie, 116 Wn.2d 831, 844, 809 P.2d 190 (1991). "Where an information does not allege the nature and extent of the crime with which the defendant is accused, so as to enable the

defendant to properly prepare his or her defense, a bill of particulars is appropriate." Bergeron, 105 Wn.2d at 18. "The test in passing on a motion for a bill of particulars should be whether it is necessary that defendant have the particulars sought in order to prepare his defense and in order that prejudicial surprise will be avoided." Noltie, 116 Wn.2d at 845 (quoting 1 C. Wright, Federal Practice § 129, at 436–37 (2d ed. 1982)).

Regardless of whether the information here was so deficient that a bill of particulars was required, we cannot say any prejudicial surprise occurred. Williams included a motion in limine requesting a bill of particulars in his trial brief submitted on November 12, 2013. The State anticipated that Williams might request a bill of particulars, so it included a response in its own trial brief submitted the same day. Despite its belief that a bill of particulars was not required, the State delineated four underlying crimes Williams either committed or intended to commit: assault, disorderly conduct, theft, and robbery. At trial, the State presented two of these crimes—theft and assault—as potential crimes Williams intended to commit when he entered Spencer-Berger's house. RP (Nov. 14, 2013) at 348. ("Nowhere in here says he has to have assaulted Nicholas or he has to have assaulted his wife or that he had to steal property or done so with the intent to do it. He just had to enter with intent to commit a crime against person or property. I submitted three, that evidence supports any of the three.") Williams was on notice of the State's theory of the case, and therefore the lack of a bill of particulars caused no prejudice. See Noltie, 116 Wn.2d at 845. ("Nothing in the record indicates what information, beyond that provided to the defense, could have been furnished to give additional notice of the charges."). Because the State gave Williams notice of the specific allegations and he was not unfairly surprised at trial, the

trial court did not abuse its discretion when it denied Williams' motion for a bill of particulars. Noltie, 116 Wn.2d at 845.

## CONCLUSION

Because the jury instructions defining theft and assault did not add any necessary elements the State was required to prove, and because Williams was not prejudiced by the trial court's decision to deny his motion for a bill of particulars, we affirm the judgment and sentence.

WE CONCUR: