IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | No. 79589-9-I |
| Respondent, | DIVISION ONE |
| v. | UNPUBLISHED OPINION |
| BENJAMIN VALLES, JR., | |
| Appellant. | |

LEACH, J. — Benjamin Valles appeals his conviction for first degree assault and first degree robbery. He asserts he received ineffective assistance of counsel because his trial counsel did not object to evidence of an out-of-court statement from a non-testifying expert witness that was inadmissible hearsay and violated his Sixth Amendment right to confrontation. He also claims the State violated his constitutional right to jury unanimity because evidence does not support the "display of a deadly weapon" means of committing first degree robbery included in the elements jury instruction.

Valles has not shown that his counsel's failure to object was not a legitimate trial tactic. And, the State presented sufficient evidence to support a finding that he displayed a deadly weapon. So, we affirm his conviction. But, we remand for the trial court to correct Valles's offender score and to strike the supervision fees from the judgment and sentence.

Citations and pincites are based on the Westlaw online version of the cited material.

BACKGROUND

On October 16, 2017, Anthony Hale was walking home from the Beacon Hill light rail station when a man stabbed him in the neck and mouth. The man said, "give me your fuckin' wallet or I'll kill you." Hale threw the man his wallet. The man picked up the wallet and ran away. Hale called 911 and described the man as Hispanic with tattoos above his eyebrows. Hale initially thought he had only been punched. Police responded and paramedics took Hale to Harborview Medical Center.

Between 1:00 p.m. and 1:30 p.m., Louis Mousseau arrived at his church located half a block away from the crime scene. He saw a man in the alleyway tell a woman, "We have to get out of here, they're on their way." A nearby home surveillance video also captured a man and a woman walking down the alleyway at 1:30 p.m. Mousseau heard sirens and gave police a description of the man he saw in the alleyway. Mousseau did not notice if the man had any tattoos and did not see either the man or the woman holding anything in their hands.

Elizabeth Santiago, a King County Metro bus driver, was driving when she received a police alert with a description of a suspect with tattoos around his eyes. At 1:40 p.m., Santiago saw a man with tattoos around his eyes board her bus. Santiago flagged two police officers. When the officers approached the bus, Valles got off. Officers contacted Valles at a bus stop. They frisked Valles and found no weapons.

Officers brought Mousseau to the bus stop and asked if he recognized Valles. He identified Valles as the man in the alleyway. Officers showed Hale a

2

photomontage containing Valles's photo. When Hale identified someone other than Valles as his attacker, they released Valles. Officers found Hale's wallet in the alley. They did not find a knife. Three days later, police arrested Valles.

At trial, Ai-Lien Ton, a latent fingerprint examiner trainee for the Seattle Police Department, testified that she conducted the print analysis in this case. Ton matched Valles's fingerprint with a latent print from a credit card in Hale's wallet. After she matched the print, she sent her work to her supervisor for review. Ton testified that three individuals, her supervisor, trainer, and another examiner independently reviewed her work and verified her findings. None of these individuals testified.

The jury convicted Valles of first degree assault and first degree robbery, and returned special verdicts finding Valles was armed with a deadly weapon.

Valles appeals.

ANALYSIS

Ineffective Assistance of Counsel

Valles asserts his defense counsel provided ineffective assistance by failing to object to Ton's testimony because it violated Valle's Sixth Amendment right to confrontation and was inadmissible hearsay under Evidence Rule (ER) 802.

The Sixth Amendment to the United States Constitution, and article I, section 22 of the Washington State Constitution, each guarantee a defendant the right to effective assistance of counsel in criminal proceedings.[1] We review

---

[1] Strickland v. Washington, 466 U.S. 668, 684-86, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

3

ineffective assistance of counsel claims de novo.[2] To establish this claim, Valles must show (1) defense counsel's conduct fell below an objective standard of reasonableness, and (2) that a reasonable possibility exists that, but for counsel's deficient performance, the outcome of his trial would have been different.[3] Our scrutiny of defense counsel's performance is highly deferential, and we employ a strong presumption of reasonableness.[4] "To rebut this presumption, the defendant bears the burden of establishing the absence of any 'conceivable legitimate tactic explaining counsel's performance.'"[5] Failure to satisfy either prong of the test defeats an ineffective assistance of counsel claim.[6]

First, we address the issue of whether defense counsel's conduct was deficient by failing to object to Ton's testimony because it was inadmissible hearsay under ER 802 or violated Valle's Sixth Amendment right to confrontation.

Hearsay is an out of court statement offered to prove the truth of the matter asserted.[7] Hearsay is inadmissible unless an exception or exclusion applies.[8] "Generally, one expert may not relay the opinion of another nontestifying expert without running afoul of the hearsay rule."[9]

---

[2] In re Brett, 142 Wn.2d 868, 873, 16 P.3d 601 (2001).
[3] State v. Reichenbach, 153 Wn.2d 126, 130, 101 P.3d 80 (2004) (citing State v. Thomas, 109 Wn.2d 222, 225-26, 743 P.2d 816 (1987)).
[4] Strickland, 466 U.S. at 689; State v. McFarland, 127 Wn.2d 322, 335-36, 899 P.2d 1251 (1995).
[5] State v. Grier, 171 Wn.2d 17, 42, 246 P.3d 1260 (2011) (quoting Reichenbach, 153 Wn.2d at 130).
[6] Strickland, 466 U.S. at 697.
[7] ER 801(c).
[8] ER 802.
[9] State v. Brown, 145 Wn. App. 62, 73, 184 P.3d 1284 (2008).

Valles cites <u>State v. Wicker</u> in where a fingerprint expert testified that a supervisor verified her fingerprint analysis.[10]  In <u>Wicker</u>, we determined the testimony about the supervisor's verification was inadmissible hearsay because it was an assertion that the supervisor agreed the fingerprints matched.[11]

Ton's testimony was hearsay.  But, we cannot say that defense counsel was deficient by not objecting on hearsay grounds.  If defense counsel had successfully objected on hearsay grounds, the State would have likely called the supervisor, trainer, and other examiner to testify.  The testimony would likely confirm Ton's results and bolster the State's case.  It would also place greater focus on the fingerprint evidence and perhaps cause the jury to place more importance on it.  It is conceivable that defense counsel's decision not to object on hearsay grounds was a "legitimate tactic."

For the same reason, it is conceivable that defense counsel's decision not to object on Sixth Amendment grounds was a legitimate tactic.  The Sixth Amendment provides criminal defendants the right to confront the witnesses against them.[12]  Admission of a testimonial statement violates a defendant's right to confront the witness unless the witness is unavailable and the defendant previously had an opportunity to cross-examine the witness regarding the statement.[13]  Here, if defense counsel had objected on confrontation clause

---

[10] 66 Wn, App. 409, 411-12, 832 P.2d 127 (1992).

[11] 66 Wn. App. at 411-12.

[12] U.S. CONST. amend. VI; <u>Crawford v. Washington</u>, 541 U.S. 36, 42, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004); WASH. CONST. art. I, § 22; <u>State v. Hurtado</u>, 173 Wn. App. 592, 595, 294 P.3d 838 (2013).

[13] <u>Crawford</u>, 541 U.S. at 68.

grounds, the State would have likely called the other experts to testify that they confirmed Ton's results. Because defense counsel's decision not to object on hearsay or confrontation grounds was a conceivable legitimate trial tactic, we cannot say their performance was deficient.

Next, even if defense counsel's performance was deficient, it did not prejudice Valles. Absent the fingerprint evidence, ample evidence supports Valle's conviction, including Mousseau's identification of Valles, and the neighbor's personal surveillance video of Valles in the alleyway.

<u>Jury Unanimity</u>

Valles challenges his conviction for robbery in the first degree claiming the State violated his constitutional right to jury unanimity because evidence does not support one of the three means of committing the crime described in the court's instructions, the display of a deadly weapon.

Article I, section 21 of the Washington State Constitution guarantees criminal defendants the right to a unanimous jury verdict.[14] "This right may also include the right to a unanimous jury determination as to the means by which the defendant committed the crime when the defendant is charged with (and the jury is instructed on) an alternative means crime."[15] Generally, an alternative means crime "is one by which the criminal conduct may be proved in a variety of ways."[16]

---

[14] <u>State v. Armstrong</u>, 188 Wn.2d 333, 340, 394 P.3d 373 (2017); <u>State v. Ortega-Martinez</u>, 124 Wn.2d 702, 707, 881 P.2d 231 (1994); <u>State v. Peterson</u>, 174 Wn. App. 828, 849, 301 P.3d 1060 (2013), review denied, <u>In re Estate of Peterson</u>, 178 Wn.2d 1021 (2013); RAP 2.5(a)(3).

[15] <u>State v. Owens</u>, 180 Wn.2d 90, 95, 323 P.3d 1030 (2014).

[16] <u>Owens</u>, 180 Wn.2d at 96.

"When a crime can be committed by alternative means, express jury unanimity as to the means is not required where each of the means is supported by substantial evidence."[17] In this circumstance, "we infer that the jury rested its decision on a unanimous finding as to the means."[18] If the record does not include sufficient evidence to support one alternative means, a particularized expression of jury unanimity is required.[19] "Evidence is sufficient if after viewing the evidence in a light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[20]

RCW 9A.56.200(1)(a) provides that a person is guilty of first degree robbery if, in the commission a robbery or immediately after, they are (i) "armed with a deadly weapon"; or (ii) "displays what appears to be a firearm or other deadly weapon"; or (iii) "inflicts bodily injury." So, first degree robbery is an alternative means crime.

The jury was instructed that to convict Valles of first degree robbery, it needed to find all six of the following elements beyond a reasonable doubt:

(1) That on or about October 16, 2017, the defendant unlawfully took personal property from the person or in the presence of another;
(2) That the defendant intended to commit theft of the property;
(3) That the taking was against the person's will by the defendant's use or threatened use of immediate force, violence or fear of injury to that person;
(4) That the force or fear was used by the defendant to obtain or retain possession of the property or to prevent or overcome resistance to the taking;
(5) (a) That in the commission of these acts or in immediate flight therefrom the defendant was armed with a deadly weapon; or

---

[17] State v. Gonzales, 133 Wn. App. 236, 243, 148 P.3d 1046 (2006).
[18] Ortega-Martinez, 124 Wn.2d at 708.
[19] Owens, 180 Wn.2d at 96.
[20] State v. Garcia Gomez, 7 Wn. App. 2d 441, 455, 434 P.3d 89 (2019).

(b) That in the commission of these acts or in immediate flight therefrom the defendant displayed what appeared to be a deadly weapon; or
(c) That in the commission of these acts or in immediate flight therefrom the defendant inflicted bodily injury; and
(6) That any of these acts occurred in the State of Washington.

Element five includes three alternative means. The jury instruction stated, "To return a verdict of guilty, the jury need not be unanimous as to which of alternatives (5)(a), or (5)(b), or (5)(c), has been proved beyond a reasonable doubt, as long as each juror finds that at least one alternative has been proved beyond a reasonable doubt."

Valles and the State agree that sufficient evidence supports (5)(a) and (5)(c) because Hale was stabbed and injured by a deadly weapon. But, they disagree on whether sufficient evidence supports (5)(b), "the defendant displayed what appeared to be a deadly weapon."

Valles contends insufficient evidence supports the display element because Hale did not see a weapon and thought he had only been punched. Valles asserts, "A knife can be concealed in the hand, such that it is not displayed to the victim."

While a weapon can by concealed from view, we have found that the display element may be satisfied by a "physical manifestation indicating there is a weapon," such as a gesture. The display element is also met where the defendant verbally indicates the presence of a weapon. For example, in State v. Kennard, even though the victim did not actually see the weapon, the court found sufficient evidence where the defendant said he had a gun and patted his hip.[21] In State v.

---

[21] 101 Wn. App. 533, 537-40, 6 P.3d 38 (2000).

Henderson, witnesses did not see a gun, but the court found sufficient evidence where the defendant said, "I have this," and held his hand in his pocket as if he had a weapon.[22]

The State contends that, by stabbing Hale, Valles made a physical manifestation indicating the presence of a deadly weapon. We agree. Valles stabbed Hale and then said, "give me your fuckin' wallet or I'll kill you." Considering the evidence in the light most favorable to the State, the combination of Valles's physical action and verbal threat are sufficient evidence to support a jury finding that he displayed a deadly weapon.

Calculation of the Offender Score

Valles challenges, and the State concedes, that the trial court should not have included a prior North Dakota conviction in the calculation of his offender score because it was a non-comparable out of state offense. RCW 9.94A.525(3) provides, "Out-of-state convictions for offenses shall be classified according to the comparable offense definitions and sentences provided by Washington law." "The State bears the burden of proving the existence and comparability of all out-of-state convictions."[23] We accept the State's concession.

Valles asserts remand for resentencing with the corrected offender score is required, or that remand to correct the offender score is required.

---

[22] 34 Wn. App. 865, 867, 664 P.2d 1291 (1983).
[23] State v. Olsen, 180 Wn.2d 468, 472, 325 P.3d 187 (2014) (citing State v. Ford, 137 Wn.2d 472, 480, 973 P.2d 452 (1999)).

Generally, a sentence based on "an incorrect offender score is a fundamental defect that inherently results in a miscarriage of justice"[24] and requires resentencing using the correct offender score.[25] "[W]hile remand is the appropriate remedy when the court incorrectly calculates the standard range, remand is unnecessary where 'the record clearly indicates that sentencing court would have imposed the same sentence anyway.'"[26]

Here, the trial court indicated that it would have imposed the same sentence regardless of whether the North Dakota conviction was included in the calculation. The court stated about the first degree assault conviction,

> I am imposing 277 months, which I would note is the top end if you scored an eight, if I was not counting the North Dakota conviction. And if I was not counting the North Dakota conviction and you only had an offender score of eight, I would be imposing the same sentence of 277 months, because that equated to just over 23 years in prison, which I think is an appropriate sentence given the facts of this case, which I had an opportunity to hear at trial.

And, the court stated about the first degree robbery conviction,

> the sentence on Count 2 is 144 months, which is right within the standard range of a [sic] offender score of nine, and it's at the top end had the court considered an offender score of eight. It still would have been the top end of that range. And it is what I would have -- I would have imposed, even if -- I would have imposed if I was not considering the North Dakota conviction.

The court should not have included the North Dakota conviction in its calculation. But, it stated the sentence it would have imposed if it had not included

---

[24] State v. Wilson, 170 Wn.2d 682, 687-89, 244 P.3d 950 (2010) (citing In re Goodwin, 146 Wn.2d 861, 867-78, 50 P.3d 618 (2002)).

[25] Wilson, 170 Wn.2d at 690 (quoting State v. Ross, 152 Wn.2d 220, 230-31, 95 P.3d 1225 (2004)).

[26] State v. Chambers, 176 Wn.2d 573, 589, 293 P.3d 1185 (2013) (quoting State v. Parker, 132 Wn.2d 182, 189, 937 P.2d 575 (1997)).

the North Dakota conviction. Because the court determined that it would have sentenced Valles to the same number of months regardless of the score, and because the number of months falls within the standard range for both offender scores, resentencing is not warranted. So, we remand to correct the offender score.

Supervision Fees

Valles asks this court to strike the supervision fees from his judgment and sentence. He contends, and the State concedes, the imposition of the supervision fees was a clerical error. The trial court stated, "I'm waiving all nonmandatory fees and costs, Mr. Valles, because I recognize that you're indigent." RCW 9.94A.703(2)(d) states the supervision fees are "waivable conditions." So, we accept the State's concession and remand to strike the supervision fees from the judgment and sentence.

CONCLUSION

Because Valles's ineffective assistance of counsel and jury unanimity claims fail, we affirm. But, we remand to correct Valles's offender score and to strike the supervision fees from the judgment and sentence.

WE CONCUR:

_____
Leach, J.

_____
Dwyer, J.

_____
Appelwick, J.