[No. 21591-8-II.    Division Two.    September 4, 1998.]
THE STATE OF WASHINGTON, *Respondent*, v. RENE
CONTRERAS, *Appellant*.

*Sheri L. Arnold*, for appellant (appointed counsel for appeal).

*John W. Ladenburg, Prosecuting Attorney,* and *Kathleen Proctor, Deputy,* for respondent.

HUNT, J. — Rene Contreras appeals his conviction for possession of a controlled substance. He was originally arrested for obstructing a law enforcement officer when Contreras refused to cooperate with a vehicle prowl investigation. During a search incident to arrest, officers discovered a baggy of methamphetamine in Contreras' pocket. He argues on appeal that (1) his initial seizure and arrest were invalid; (2) his trial counsel's representation was defective because (a) he did not move to suppress the methamphetamine as fruit of an illegal seizure and/or arrest and (b) the trial court would likely have suppressed the methamphetamine and dismissed the charges. We affirm.

## FACTS

Shortly after noon on October 15, 1996, police received a call about a possible vehicle prowl at 6303 East "F" Street in Tacoma, where a male was prowling around a white vehicle. Within five minutes of receiving the dispatch, Officer Michael Scarfo responded; he arrived at the scene and observed Contreras seated behind the steering wheel of a white car parked in front of 6303 East "F" Street.

Scarfo exited his vehicle and ordered Contreras to raise his hands. Contreras did not raise his hands; instead, he just smiled. Scarfo again ordered Contreras to raise his hands, but he did not. Contreras seemed "out of it," again smiled at Scarfo, and began moving his hands back and forth around the dashboard, "like he was going to do

something with them." Scarfo then pulled his gun, pointed it at Contreras, and again ordered him to raise his hands. Contreras continued to move his hands around the dashboard.

Officer Gregory Wolfe arrived and approached the white vehicle from behind. Scarfo opened the driver's side door and ordered Contreras to exit the car, but Contreras did not move. The officers pulled Contreras out of the vehicle and pushed him up against the car with his hands on the roof. Contreras did not respond to any of the officers' questions about his identity or purpose for being in the vehicle. While the officers conducted a weapons patdown, Contreras took his hands off the roof and moved them down by his chest. The officers then handcuffed Contreras and placed him in the patrol car.

With Contreras in the patrol car, the officers continued to investigate the possible vehicle prowl. Wolfe asked Contreras whether he owned the white car or had permission to be inside it. Contreras refused to answer or to disclose his name or other information. Wolfe told Contreras he could be arrested if he did not provide information about who he was or why he was in the car. Contreras then told Wolfe his name was "James." Scarfo did not smell any intoxicants on Contreras, but he noticed that Contreras appeared to be under the influence of a controlled substance.

Meanwhile, the officers inspected the white car for evidence of forced entry but found none. On the front passenger seat they discovered a paper bag containing miscellaneous items, including a wallet with the identification of a "James Rideout."

The officers determined the white car was registered to a Ronald Sigafoos, who lived at 6307 East "F" Street, but they were unable to contact him. The neighbor who had called the police about the vehicle prowl told the officers on the scene that he had seen a male ring the doorbell of 6307 East "F" Street, receive no answer, walk to the white car, try to open the doors, and then get in through the driver's open door.

The officers arrested Contreras for obstructing a law enforcement officer and took him to the station for booking. At the station, Contreras was uncooperative and refused to talk to police. During the booking search, the booking officer found in Contreras' jacket pocket a baggy containing methamphetamine.

The State charged Contreras with unlawful possession of a controlled substance, RCW 69.50.401(d). At trial, Contreras testified that he had been drinking the night before, but could not remember how he had gotten to the area, how he had gotten into the car, or what had happened with the police; and he did not know a James Rideout. The jury convicted Contreras as charged.

## ANALYSIS
### A. Constitutional Claims Not Raised Below

■ Contreras' attorney neither challenged Contreras' seizure and arrest nor moved to suppress the methamphetamine. We do not review on appeal an alleged error not raised at trial unless it is a "manifest error affecting a constitutional right." RAP 2.5(a)(3); *State v. Scott*, 110 Wn.2d 682, 686-87, 757 P.2d 492 (1988). An appellant must show actual prejudice in order to establish that the error is "manifest." *State v. Lynn*, 67 Wn. App. 339, 346, 835 P.2d 251 (1992).

1. Adequacy of Record

The purposes underlying RAP 2.5(a) were addressed in *State v. McFarland*, 127 Wn.2d 322, 333, 899 P.2d 1251 (1995):

> [C]onstitutional errors are treated specially under RAP 2.5(a) because they often result in serious injustice to the accused and may adversely affect public perceptions of the fairness and integrity of judicial proceedings. *Scott*, 110 Wn.2d at 686-87. On the other hand, "permitting *every possible* constitutional error to be raised for the first time on appeal undermines the trial process, generates unnecessary appeals, creates undesirable retrials and is wasteful of the limited resources of prosecutors, public defenders and courts". *Lynn*, 67 Wn. App. at 344.

As an exception to the general rule, therefore, RAP 2.5(a)(3) is not intended to afford criminal defendants a means for obtaining new trials whenever they can identify some constitutional issue not raised before the trial court. Rather, the asserted error must be "manifest"—i.e., it must be "truly of constitutional magnitude". *Scott*, 110 Wn.2d at 688.

█ Where the alleged constitutional error arises from trial counsel's failure to move to suppress, the defendant "must show the trial court likely would have granted the motion if made. It is not enough that the Defendant allege prejudice—actual prejudice must appear in the record." *McFarland*, 127 Wn.2d at 334.

In assessing actual prejudice, the *McFarland* court noted:

*In each case, because no motion to suppress was made, the record does not indicate whether the trial court would have granted the motion.*[2] Without an affirmative showing of actual prejudice, the asserted error is not "manifest" and thus is not reviewable under RAP 2.5(a)(3).

[2]*Because no motion to suppress was made, there exists no record of the trial court's determination of the issue in either case.* We recognize the predicament this causes for McFarland and Fisher: each Defendant must show the motion likely would have been granted based on the record in the trial court, yet the record has not been developed on this matter because the motion was not made. Even a de novo review of the records (which would relieve each Defendant of his burden to show the alleged error was manifest) does not reveal actual prejudice accruing to either Defendant from the asserted constitutional error.

*McFarland*, 127 Wn.2d at 334 (emphasis added).

Here, the State urges us to read the emphasized *McFarland* language literally, arguing that, where there has been no trial court ruling, an appellate court cannot know what the trial court would have done and, therefore, cannot review the alleged error. But such a narrow reading of *McFarland* would essentially preclude *any* review of *any* alleged error resulting from failure to make *any* motion or

*any* objection at trial; we could no longer review such errors for the first time on appeal because there would be no record of how the trial court would have ruled. Adopting the State's position would preclude review on a record devoid of a trial court's ruling where no motion or objection was made; such an outcome would directly contravene RAP 2.5 and render the rule essentially meaningless. We therefore decline to adopt such a narrow reading of *McFarland*.

Instead, we read RAP 2.5 together with *McFarland*'s underlying discussion and other case law concerning appellate review of constitutional issues not raised at trial. We conclude that when an adequate record exists, the appellate court may carry out its long-standing duty to assure constitutionally adequate trials by engaging in review of manifest constitutional errors raised for the first time on appeal. *See State v. Riley*, 121 Wn.2d 22, 31, 846 P.2d 1365 (1993).[1]

We read *McFarland* as focusing primarily on the inadequacy of the record on the issue raised for appellate review, not on the lack of a trial court *ruling*. For example, the *McFarland* court states: *"If the facts necessary to adjudicate the claimed error are not in the record on appeal,* no actual prejudice is shown and the error is not manifest." *McFarland*, 127 Wn.2d at 333 (emphasis added) (citing *Riley*, 121 Wn.2d at 31). Thus, "each Defendant must show the mo-

---

[1]Where the court stated:

Riley raises his Fourth Amendment argument against the admission of the incriminating statements for the first time on appeal. Arguments not raised in the trial court generally will not be considered on appeal. Moreover, although RAP 2.5(a) permits a party to raise for the first time on appeal a "manifest error affecting a constitutional right", RAP 2.5(a) does not mandate appellate review of a newly raised argument *where the facts necessary for its adjudication are not in the record and therefore where the error is not "manifest".* Here, the record is unclear as to whether any or all of Riley's incriminating statements were the product of the invalid search warrant. In particular, the record is unclear whether Riley made incriminating statements prior to being told the investigating officer had a search warrant. *Because we lack the needed record for review, we decline to consider whether the Fourth Amendment requires exclusion of Riley's incriminating statements.*

*Riley*, 121 Wn.2d at 31 (emphasis added) (footnote and citations omitted).

tion likely would have been granted based on the record in the trial court . . . ." *McFarland*, 127 Wn.2d at 334 n.2. In a footnote, the court noted the facts surrounding McFarland's arrest suggest that a motion, if made, "properly would have been denied." *McFarland*, 127 Wn.2d at 334 n.2. Thus the *McFarland* record was inadequate because, not only had there been no motion to suppress, but also the record had not been otherwise developed.

In contrast, here the record is sufficiently developed for us to determine whether a motion to suppress clearly would have been granted or denied; thus we can review the suppression issue, even in the absence of a motion and trial court ruling thereon.[2] Accordingly, we look to the facts of Contreras' seizure and arrest to determine whether a motion to suppress would properly have been granted or denied.

## 2. Initial Seizure

■ Police may detain a citizen for an investigative stop on less than probable cause. *See Terry v. Ohio*, 392 U.S. 1, 25-26, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968). An investigative stop is reasonable if the officer has specific and articulable facts giving rise to a reasonable suspicion that the suspect has been or is involved in criminal activity. *See State v. Williams*, 102 Wn.2d 733, 739, 689 P.2d 1065 (1984) (citing *Terry*, 392 U.S. at 21).

Contreras argues that the officers' handcuffing and placing him in the patrol car constituted an unconstitutional seizure because they lacked a reasonable and articulable suspicion that he was involved in criminal activity until *after* they seized him. His position is not supported by the case law.

In *State v. Little*, 116 Wn.2d 488, 806 P.2d 749 (1991), po-

---

[2]Even if the record did not permit direct review based on the existing trial record, a defendant/appellant could raise the issue through a personal restraint petition. *McFarland* specifically states, "If a defendant wishes to raise issues on appeal that require evidence or facts not in the existing trial record, the appropriate means of doing so is through a personal restraint petition . . . ." *McFarland*, 127 Wn.2d at 335.

lice received a call reporting a group of juveniles loitering on the grounds of an apartment complex. When the officers arrived, Little fled. The court determined that these circumstances created a reasonable suspicion that Little was involved in criminal activity and justified the officers' investigative detention. *Little*, 116 Wn.2d at 496.

In *State v. Glover*, 116 Wn.2d 509, 806 P.2d 760 (1991), police routinely patrolled the grounds of an apartment complex for trespassers and loiterers. During one such patrol, two officers noticed Glover, who they believed was not a resident of the complex. Glover tried to evade the police by walking in the other direction; he kept looking back and fidgeting while walking away. *Glover*, 116 Wn.2d at 512. The court held that the officers had a reasonable suspicion of criminal activity justifying an investigatory detention, based on Glover's location and suspicious actions and the officers' knowledge of the complex's residents. *Glover*, 116 Wn.2d at 514.

Here, the officers received a report of a possible vehicle prowl of a white car by an unidentified male in front of 6303 East "F" Street. Within five minutes, Scarfo arrived and found Contreras sitting in a white car in front of 6303 East "F" Street. Contreras appeared "out of it," refused to obey the officer's commands to raise his hands or get out of the car, and refused to speak to the officers. As in *Glover*, these facts created a reasonable suspicion of criminal activity. Contreras' location in the vehicle, his suspicious and uncooperative behavior, coupled with the report of a vehicle prowl of a white car in that location, justified the officers' investigatory stop.

3. Warrantless Arrest

■ A person is guilty of obstructing a law enforcement officer if he or she "willfully hinders, delays, or obstructs any law enforcement officer in the discharge of his or her official powers or duties." RCW 9A.76.020(1).

The statute's essential elements are (1) that the action or inaction in fact hinders, delays, or obstructs; (2) that the

hindrance, delay, or obstruction be of a public servant in the midst of discharging his official powers or duties; (3) knowledge by the defendant that the public servant is discharging his duties; and (4) that the action or inaction be done knowingly by the obstructor . . . .

*State v. CLR*, 40 Wn. App. 839, 841-42, 700 P.2d 1195 (1985) (citing *Cover v. State*, 297 Md. 398, 466 A.2d 1276, 1284 (1983)).[3]

■ Contreras does not contend that any of the above four elements are lacking. Rather, he argues that his actions did not constitute grounds for an arrest for obstructing where he merely refused to talk to the officer. Contreras is correct that mere refusal to answer questions is not sufficient grounds to arrest for obstruction of a police officer.[4] But Contreras did more than merely refuse to talk. He also disobeyed the officer's orders to put his hands up in view of Scarfo, to exit the car, to keep his hands on top of the car, and to provide his name. Instead, he gave Wolfe a false name.

In *State v. Hudson*, 56 Wn. App. 490, 497-98, 784 P.2d 533 (1990), Division One held that a suspect's flight from police hindered or delayed investigation and arrest, thus supporting a conviction for obstruction. In *Little*, the court ruled, "Appellants refusal to stop when requested by the officers hindered, delayed and/or obstructed the officers in the discharge of their official duties." *Little*, 116 Wn.2d at 497. And in *State v. Mendez*, 88 Wn. App. 785, 792-93, 947 P.2d 256 (1997), the court determined that by disobeying an officer's order to return to the car and attempting to flee, the appellant "hindered, delayed and obstructed the police officers in their investigation of the traffic offense." Finally, in *City of Sunnyside v. Wendt*, 51 Wn. App. 846,

---

[3]In *CLR*, Division One initially stated that "done knowingly" meant done "with intent to hinder." *CLR*, 40 Wn. App. at 842. But later, Division One corrected that statement, stating, "knowingly" does not mean "intentionally." *See State v. Hudson*, 56 Wn. App. 490, 496 n.2, 784 P.2d 533 (1990).

[4]*See State v. White*, 97 Wn.2d 92, 106, 640 P.2d 1061 (1982); *State v. Hoffman*, 35 Wn. App. 13, 16, 664 P.2d 1259 (1983).

851-52, 755 P.2d 847 (1988), the court found that by falsely stating he had no license, Wendt knowingly hindered the officer in his investigation of a traffic accident by giving false information.

Here, Contreras' additional actions—disobeying police orders to put his hands up and to exit the vehicle, and giving false information—hindered and delayed the officers' investigation of a possible vehicle prowl. These actions are sufficient to support an arrest for obstructing a law enforcement officer.[5]

## B. Ineffective Assistance of Counsel

Alternatively, even if we were to adopt the State's strict reading of *McFarland* and hold that we cannot review Contreras' illegal seizure claim for the first time on appeal, we could still reach the issue through Contreras' ineffective assistance of counsel claim. Division One has adopted the view that a defendant waives his or her right to challenge the admission of evidence if he or she does not object or move to suppress at trial. Accordingly, Division One apparently will not review for the first time on appeal a claim that evidence should have been suppressed. *See State v. Mierz*, 72 Wn. App. 783, 789, 866 P.2d 65 (1994); *State v. Tarica*, 59 Wn. App. 368, 373, 798 P.2d 296 (1990) (*overruled on other grounds by McFarland*, 127 Wn. App. at 337).[6]

Instead, Division One addresses the question of

---

[5]The State argues that, alternatively, the officers had probable cause to arrest Contreras for vehicle prowling. But we need not address this issue.

[6]We note that *McFarland*'s decision not to review and the approach taken by Division One in *Mierz* do not violate RAP 2.5. RAP 2.5 is not "intended to afford criminal defendants a means for obtaining new trials whenever they can identify some constitutional issue not raised before the trial court." *McFarland*, 127 Wn.2d at 333.

The exceptions defined by RAP 2.5 do not give a party *an absolute* right to appellate review of an issue raised for the first time on appeal. The rule states only that a "party *may raise*" such an issue for the first time on appeal. RAP

whether a motion to suppress would likely have been granted through a claim of ineffective representation based on a failure to move to suppress.

> Admission of evidence obtained in violation of either the federal or state constitution is an error of constitutional magnitude. A failure to move to suppress evidence, however, constitutes a waiver of the right to have it excluded, and the trial court does not err in considering evidence that the defendant has not moved to suppress. Because there was no error below, this issue is not properly raised for the first time on appeal as a trial court error. As discussed below, however, this issue is properly considered in the context of whether Mierz received effective assistance of counsel, and we analyze it accordingly.

*Mierz*, 72 Wn. App. at 789 (citation omitted).

> To demonstrate ineffective assistance of counsel, a defendant must make two showings: (1) defense counsel's representation was deficient, *i.e.*, it fell below an objective standard of reasonableness based on consideration of all the circumstances; and (2) defense counsel's deficient representation prejudiced the defendant, *i.e.*, there is a reasonable probability that, except for counsel's unprofessional errors, the result of the proceeding would have been different.

*McFarland*, 127 Wn.2d at 334-35 (citing *State v. Thomas*, 109 Wn.2d 222, 225-26, 743 P.2d 816 (1987) (applying the two-prong test from *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984))).

To satisfy the second prong, a defendant bears the burden of showing, based on the record developed in the trial court, that the result of the proceeding would have been different but for counsel's deficient representation. *Thomas*, 109 Wn.2d at 225-26. The *McFarland* court rejected an ineffective assistance challenge because the "claims fail[ed] on the second prong of the *Strickland* test."

---

2.5(a). *The rule does not guarantee that the appellate court will decide the issue.*

2 LEWIS H. ORLAND & KARL B. TEGLAND, WASHINGTON PRACTICE: RULES PRACTICE 567 (1997) (emphasis added). Thus, the appellate court is not required to review every alleged constitutional error not raised below.

*McFarland*, 127 Wn.2d at 337. The court stated, "the record reveals a substantial basis for denying a motion to suppress . . . . Absent an affirmative showing that the motion probably would have been granted, there is no showing of actual prejudice." *McFarland*, 127 Wn.2d at 337 n.4.

Contreras contends he was deprived of his constitutional right to effective representation because his trial counsel did not move to suppress the methamphetamine found in his jacket following his arrest, which motion likely would have been granted. But similar to *McFarland*, Contreras has not demonstrated that a motion to suppress would have been granted. He therefore cannot show actual prejudice resulting from his counsel's failure to so move, and his claim fails the second prong of the *Strickland* test. Accordingly, we hold that Contreras was not deprived of his constitutional right to effective representation of counsel.

## C. CONCLUSION

Holding that Contreras has established no grounds for reversal, we affirm.

HOUGHTON, C.J., and ARMSTRONG, J., concur.