FILED
COURT OF APPEALS
DIVISION II

2013 MAY -7 AM 11: 47

STATE OF WASHINGTON

BY_____
    DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 41949-1-II |
| Respondent, | |
| v. | |
| DWAYNE WRIGHT, | UNPUBLISHED OPINION |
| Appellant. | |

QUINN-BRINTNALL, P.J. — A jury found Dwayne Wright guilty of unlawful possession of a controlled substance (methamphetamine) with intent to deliver while armed with a firearm within 1,000 feet of a school bus stop, unlawful possession of a controlled substance (heroin), second degree unlawful possession of a firearm, third degree driving with a suspended license, and unlawful use of drug paraphernalia. RCW 69.50.401(2)(b); RCW 9.94A.530; RCW 69.50.4013(1); RCW 9.41.040(2)(a)(i); RCW 46.20.342; former RCW 69.50.412(1) (2002). Wright appeals, arguing that (1) his counsel was ineffective for failing to challenge the validity of a vehicle search warrant obtained, in part, by establishing probable cause with potentially inadmissible evidence from a drug dog sniff; (2) insufficient evidence supports his unlawful possession convictions and firearm enhancement; and (3) the trial court's sentencing provisions violate his freedom of association.

We hold that because probable cause supported issuing the search warrant even absent the drug dog evidence, counsel was not ineffective for failing to challenge the warrant on those grounds. In addition, sufficient evidence supports Wright's unlawful possession convictions and a sufficient nexus exists between the firearm Wright constructively possessed and the drugs he intended to sell to support the firearm sentencing enhancement. However, we agree with Wright that the sentencing court's community custody provision prohibiting him from associating with "drug possessors, users, [or] sellers," without requiring that any association be knowing, is impermissibly vague. Clerk's Papers (CP) at 224. Accordingly, we affirm Wright's conviction and sentence but remand to the sentencing court to clarify the community custody provision.

## FACTS

BACKGROUND

On March 5, 2010, at approximately 1:15 AM, Pierce County Deputy Sheriff Robert Shaw detained Wright for driving a vehicle with a burned out license plate light. Shaw approached the driver side of Wright's vehicle while his partner, Pierce County Deputy Sheriff Michael Cooke, approached the vehicle's passenger side. Inside the vehicle, the deputies saw a broken narcotics pipe in plain view along with a "shaved" key of the type commonly used to steal cars. The deputies had Wright step out of the vehicle and, as he did, Cooke noticed that Wright had been sitting on a pair of black leather gloves and a metal paint scraper. Cooke also saw Wright's smart phone in plain view displaying a text message that read, "If you still want to do the deal wit dem pills, call me." CP at 16. The deputies arrested Wright for possessing drug paraphernalia and automotive theft tools and in a pat-down search of Wright incident to arrest, discovered another glass pipe with residue and $565 in bills grouped together in smaller

2

denominations. Cooke field tested the pipe's residue which was positive for methamphetamine. A records check revealed that Wright's driver's license was suspended.

After placing Wright in their patrol car, the deputies requested that a K-9 officer respond to the scene. The narcotics dog, Timber, alerted indicating the presence of narcotics in a metal lockbox on the passenger seat of the vehicle as well as in the area where the deputies first saw the broken narcotics pipe. While Wright was booked at Pierce County Jail, the deputies had the vehicle towed to a nearby precinct to be impounded.

Pierce County Deputy Sheriff Christian Nordstrom obtained a search warrant for the impounded vehicle. In executing the warrant, Nordstrom opened the lockbox on Wright's passenger seat and, inside, discovered a digital scale, three small containers containing methamphetamine, money gram receipts with Wright's name on them, a .40 caliber pistol, a piece of black tar heroin, and various paperwork including a letter to Wright from the Washington Department of Licensing. Inside Wright's trunk, Nordstrom found three bags of marijuana and a "window punch," a tool typically used to break car windows. 2 Report of Proceedings (RP) at 334. As part of the investigation, Nordstrom also performed school zone measurements and determined that Wright had been arrested within 1,000 feet of a school zone.

The State charged Wright with (1) unlawful possession of a controlled substance (methamphetamine) with intent to deliver while armed with a firearm, (2) unlawful possession of a controlled substance (marijuana) with intent to deliver while armed with a firearm, (3) unlawful possession of a controlled substance (heroin), (4) second degree unlawful possession of a firearm, (5) driving with a third degree suspended license, and (6) unlawful use of drug paraphernalia. RCW 69.50.401(2)(b); RCW 9.94A.530; RCW 69.50.401(2)(c); RCW 69.50.4013(1); RCW 9.41.040(2)(a)(i); RCW 46.20.342; former RCW 69.50.412(1). The State

3

later amended the charges to include school zone enhancements for both unlawful possession with intent to deliver charges.

PROCEDURE

Before trial, Wright moved the trial court to suppress all of the evidence against him, arguing that Deputies Shaw and Cooke pulled him over as part of a pretextual stop to "conduct a speculative criminal investigation unrelated to [Wright's] driving, and not for the purpose of enforcing the traffic code." CP at 9. The State responded that the stop was not pretextual as Wright's rear license plate light was nonoperational, a traffic code violation. At the CrR 3.6 hearing, Wright admitted that the broken methamphetamine pipe and shaved key were in plain view when officers approached, but maintained that the officers never told him why they had pulled him over. Wright did not argue that the police lacked probable cause to arrest him after he had been pulled over or that they lacked probable cause to obtain a warrant to search his vehicle. After hearing additional testimony from Shaw, Cooke, and Wright's mechanic, the trial court ruled that the stop was not pretextual.

Wright's jury trial began on February 10, 2011. Deputies Shaw and Cooke testified about the traffic stop and the ensuing arrest. Deputy Nordstrom testified about searching Wright's vehicle. Wright testified in his own defense and admitted that both methamphetamine pipes were his, that the "shaved" key on his key ring was given to him by a friend because Wright had lost his own car key, and that the lockbox was his but that he had left it unlocked in his trunk prior to the incident and that he had loaned his car to an unnamed friend earlier in the evening. In light of this testimony, the defense requested and received a jury instruction for unwitting possession.

On February 16, the jury returned its verdict, finding Wright guilty of all counts except count II, the marijuana charge. The trial court sentenced Wright to 204 months confinement, including a 60-month firearm enhancement and 24-month school zone enhancement. The trial court also ruled that upon his release, Wright would be placed in community custody for 24 months during which time he should have no contact with "drug possessors, users, [or] sellers." CP at 224. Wright timely appeals his judgment and sentence.

## DISCUSSION

INEFFECTIVE ASSISTANCE OF COUNSEL

Wright argues that he received ineffective assistance of counsel because his trial counsel failed to challenge the dog sniff search of his vehicle or the probable cause basis for the search warrant.[1] Because the record reflects that probable cause supported issuing the search warrant

---

[1] Wright also argues, at length, that an appellant may raise an unpreserved evidentiary issue for the first time on appeal so long as the appellate record is sufficiently developed to address the issue. Our decisions have long held that a defendant may not raise a suppression issue for the first time on appeal if they have failed to preserve the issue by not challenging the evidence at trial. *See, e.g., State v. Lee*, 162 Wn. App. 852, 259 P.3d 294 (2011), *review denied*, 173 Wn.2d 1017 (2012); *see also State v. Tarica*, 59 Wn. App. 368, 798 P.2d 296 (1990), *overruled on other grounds by State v. McFarland*, 127 Wn.2d 322, 899 P.2d 1251 (1995); *State v. Mierz*, 72 Wn. App. 783, 866 P.2d 65, 875 P.2d 1228 (1994), *aff'd*, 127 Wn.2d 460, 901 P.2d 286 (1995). Wright argues, however, that recent decisions have created a "modern" approach to issue preservation that allows a party to challenge a suppression issue for the first time on appeal. In support of this contention, Wright relies on *State v. Abuan*, 161 Wn. App. 135, 257 P.3d 1 (2011), *State v. Contreras*, 92 Wn. App. 307, 966 P.2d 915 (1988), and *State v. Robinson*, 171 Wn.2d 292, 253 P.3d 84 (2011).

But these cases do not stand for Wright's proposition that Washington jurisprudence has developed a "modern" approach to issue preservation. *Abuan*, for one, held that a defendant had not waived his challenge to a warrantless vehicle search because two seminal cases, *State v. Patton*, 167 Wn.2d 379, 219 P.3d 651 (2009), and *State v. Valdez*, 167 Wn.2d 761, 224 P.3d 751 (2009), were decided after his trial and convictions and principles of retroactivity allowed him to raise preservation issues that would be controlled by the *Patton* and *Valdez* cases for the first time on appeal. *Abuan*, 161 Wn. App. at 148-49. The *Robinson* court came to the same conclusion and established a four-part test for determining whether issue preservation principles should apply when a defendant makes a suppression challenge for the first time on appeal

irrespective of information contributed by the canine officer, any challenge to the search warrant below would have been fruitless in excluding the evidence contained in the lockbox. Accordingly, Wright fails to establish that his counsel's performance prejudiced him and his ineffective assistance claim fails.

To prevail on his ineffective assistance of counsel claim, Wright must show both deficient performance and resulting prejudice. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Counsel's performance is deficient if it fell below an objective standard of reasonableness. *State v. Stenson*, 132 Wn.2d 668, 705-06, 940 P.2d 1239 (1997), *cert. denied*, 523 U.S. 1008 (1998). This court's scrutiny of counsel's performance is highly deferential; this court strongly presumes reasonableness. *State v. McFarland*, 127 Wn.2d 322, 335-36, 899 P.2d 1251 (1995). To rebut this presumption, a defendant bears the burden of establishing the absence of any "'conceivable legitimate tactic explaining counsel's performance.'" *State v. Grier*, 171 Wn.2d 17, 33, 246 P.3d 1260 (2011) (quoting *State v. Reichenbach*, 153 Wn.2d 126, 130, 101 P.3d 80 (2004)). To establish prejudice, a defendant must show a reasonable probability that the outcome of the trial would have differed absent the deficient performance. *State v. Thomas*, 109 Wn.2d 222, 226, 743 P.2d 816 (1987). "A

---

following substantive changes in the law. 171 Wn.2d at 305. Both *Abuan* and *Robinson* are distinguishable as, here, Wright does not claim that any substantive changes in the law have occurred since his trial.

In *Contreras*, this court held that if a defendant raises an ineffective assistance of counsel claim for failure to suppress evidence, the court *may* address the claim if the record is sufficient to determine whether the suppression motion would have been granted below. 92 Wn. App. at 313-14. But the *Contreras* court explicitly noted that RAP 2.5 "'*does not guarantee that the appellate court will decide*'" an evidentiary issue raised for the first time on appeal. 92 Wn. App. at 317-18 n.6 (quoting 2 LEWIS H. ORLAND AND KARL B. TEGLAND, WASHINGTON PRACTICE: RULES PRACTICE, at 567 (1997)). Because we address Wright's evidentiary claims in the context of his ineffective assistance of counsel claim, we do not separately address the unpreserved suppression argument.

reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

Had the canine search been illegal (as Wright contends), any information contributed by the canine search would be impermissible for supporting the affidavit of probable cause for a search warrant. As the Washington Supreme Court explained in *State v. Eisfeldt*, 163 Wn.2d 628, 640, 185 P.3d 580 (2008) (second alteration in original),

> Where evidence is obtained as a direct result of an unconstitutional search, that evidence must . . . be excluded as "'fruit of the poisonous tree.'" [*Wong Sun v. United States*, 371 U.S. 471, 487-88, 83 S. Ct. 407, 9 L. Ed. 2d 441 (1963)]. "[I]f information contained in an affidavit of probable cause for a search warrant was obtained by an unconstitutional search, that information may not be used to support the warrant." *State v. Ross*, 141 Wn.2d 304, 311-12, 4 P.3d 130 (2000). The court must view the warrant without the illegally gathered information to determine if the remaining facts present probable cause to support the search warrant. [*Ross*, 141 Wn.2d] at 314-15. If the warrant, viewed in this light, fails for lack of probable cause, the evidence seized pursuant to that warrant must also be excluded.

Before a magistrate issues a search warrant, there must be an adequate showing of "circumstances going beyond suspicion and mere personal belief that criminal acts have taken place and that evidence thereof will be found in the premises to be searched." *State v. Patterson*, 83 Wn.2d 49, 58, 515 P.2d 496 (1973). Probable cause for a search "requires a nexus between criminal activity and the item to be seized and between that item and the place to be searched." *State v. Neth*, 165 Wn.2d 177, 183, 196 P.3d 658 (2008). But even assuming (without deciding) that the canine search in this case was invalid, probable cause still existed to support issuing the search warrant.

Here, Deputy Nordstrom's affidavit for search warrant contained the following information independent of the dog sniff evidence: (1) Deputy Shaw saw a "broken glass smoking pipe in a storage cubby near the steering wheel" of Wright's car as he approached the

vehicle; (2) "Deputy Cooke noted that one of [Wright's] keys had been shaved down; . . . a common method of making keys which will work in a number of similar vehicles"; (3) after arresting Wright for possession of drug paraphernalia and possession of auto theft tools, Shaw located "a glass drug pipe of the variety commonly used to smoke methamphetamine" in Wright's shorts which Cooke field-tested positive for methamphetamine;[2] and (4) a records check revealed that "Wright's criminal history includes, among other things, arrests for: Unlawful Possession of a Controlled Substance, Unlawful Possession of a Controlled Substance with Intent to Deliver, Unlawful Delivery of a Controlled Substance, Unlawful Possession of a Firearm, Possession of Burglary Tools, Felony Theft, and Altering a Firearm's Identification Numbers." CP at 21-22.

In addition, Deputy Nordstrom attached the deputies' incident report to the affidavit for the issuing judge/magistrate to review. CP at 21 ("Deputy Shaw's report is attached as Attachment One."). That report further notes that a pat-down search of Wright, incident to arrest, revealed that he had "$565 ($515 in the left pocket, $50 in the right). The money was folded in smaller denominations, consistent with money received over the course of numerous

---

[2] Wright also argues that "[t]he fact that [he] was booked for unlawful possession of drug paraphernalia must also be excised from the complaint for the search warrant" because "[m]ere possession of drug paraphernalia is not a crime and cannot be the basis for an arrest" and "[a] police officer . . . cannot arrest for a misdemeanor unless the arrestee commits that crime in the officer's presence. Br. of Appellant at 43 (emphasis omitted) (citing *State v. McKenna*, 91 Wn. App. 554, 563, 958 P.2d 1017 (1998); *State v. O'Neill*, 148 Wn.2d 564, 584 n.8, 62 P.3d 489 (2003); RCW 10.31.100). But Wright misreads the dispositive statute at issue. Former RCW 69.50.412(1) clearly states that it is a misdemeanor "for any person to use drug paraphernalia to . . . pack, repack, *store, contain,* conceal, inject, ingest, inhale, or otherwise introduce into the human body a controlled substance." (Emphasis added.) Here, although officers did not observe Wright ingest drugs in their presence (the only portion of the statute Wright focuses on in his argument), both methamphetamine pipes contained significant drug residue and, accordingly, the pipes were being used to store or contain illicit drugs—a misdemeanor occurring in the officers' presence warranting an arrest.

drug-related transactions." CP at 16. It also mentions the text message on Wright's phone, in plain view, mentioning a potential drug deal.

Taken together, these facts clearly support a finding of probable cause that Wright was involved in criminal activity and that evidence of that activity would be found in his vehicle. Although "[i]nnocuous objects that are equally consistent with lawful and unlawful conduct do not constitute probable cause to search" a vehicle, Wright's possession of a methamphetamine pipe with a significant amount of illicit drug residue still contained in it was not innocuous. *Neth*, 165 Wn.2d at 185. Nor were the potential automotive theft tools, the second (broken) methamphetamine pipe in the vehicle, or the text message concerning a drug transaction. Moreover, where strong factual similarities exist between a defendant's past crimes and his or her currently charged offenses, criminal history can significantly contribute to a probable cause determination. *State v. Hobart*, 94 Wn.2d 437, 446, 617 P.2d 429 (1980). Here, Wright had an extensive criminal history related to drug use, drug dealing, and theft. Accordingly, a "commonsense" evaluation of Deputy Nordstrom's affidavit supports a probable cause finding without reliance on information received from the dog sniff. *State v. Jackson*, 150 Wn.2d 251, 265, 76 P.3d 217 (2003).

Thus, even if Wright had successfully challenged the drug dog sniff at trial, probable cause still clearly supported issuing the search warrant for Wright's vehicle. Accordingly, there is no probability that the outcome of the trial would have been different had a challenge to the

drug dog sniff been successful. Wright fails to establish that he was prejudiced by his counsel's performance.[3]

SUFFICIENCY OF THE EVIDENCE

Wright argues that insufficient evidence supports his convictions for unlawful possession of heroin, unlawful possession of methamphetamine with intent to deliver, and unlawful possession of a firearm.[4] Wright also argues that insufficient evidence supports the firearm enhancement attached to his unlawful possession with intent to deliver conviction. Because sufficient evidence supports the convictions and the enhancement, we disagree.

Sufficient evidence exists to support a conviction if any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt when viewing the evidence in the light most favorable to the State. *State v. Hosier*, 157 Wn.2d 1, 8, 133 P.3d 936 (2006). A defendant claiming insufficiency of the evidence admits the truth of the State's evidence and all inferences that reasonably can be drawn from the evidence. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). Circumstantial evidence and direct evidence are equally reliable. *State v. Delmarter*, 94 Wn.2d 634, 638, 618 P.2d 99 (1980). We defer to the trier of fact on

---

[3] We also note that Wright's counsel made the strategic decision to challenge the police stop on the grounds that it was pretextual. This was a legitimate tactic which explains why counsel did not challenge the probable cause basis for the warrant. *Grier*, 171 Wn.2d at 33. Had the pretextual challenge succeeded, *all* evidence from the stop would have been excluded. Had a challenge to the search warrant succeeded, some evidence would still have been admissible against Wright (e.g., the drug pipes in plain view).

[4] We note that Wright's appellant counsel does not clearly argue that insufficient evidence supports Wright's convictions for unlawful possession of the drugs and gun. Instead, counsel's sufficiency of the evidence analysis relates only to the analysis concerning whether probable cause supported the vehicle search warrant. This approach confuses the two markedly distinct concepts (whether probable cause supports the issuing of a search warrant and whether sufficient evidence supports a criminal conviction). We address each issue separately.

issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence. *State v. Walton*, 64 Wn. App. 410, 415-16, 824 P.2d 533, *review denied*, 119 Wn.2d 1011 (1992).

A.    HEROIN POSSESSION

To convict Wright for unlawful possession of a controlled substance (heroin), the State had to prove beyond a reasonable doubt that Wright possessed a controlled substance without a valid prescription or other authorization. RCW 69.50.4013(1). Here, officers found heroin in a lockbox on the front seat of Wright's vehicle. Wright neither denies that the substance was heroin nor claims that he had a prescription or other authorization to possess the substance. Accordingly, we must merely determine whether Wright constructively possessed the lockbox.

Possession may be actual or constructive. Actual possession of contraband occurs when the goods are in the personal custody of the person charged with possession; whereas, constructive possession occurs when the person charged with possession has dominion and control over the goods. *State v. Callahan*, 77 Wn.2d 27, 29, 459 P.2d 400 (1969). To determine whether a defendant constructively possesses an unlawful substance, we examine the totality of the situation to ascertain if substantial evidence exists that tends to establish circumstances from which the trier of fact could reasonably infer the defendant had dominion and control over the contraband. *State v. Cote*, 123 Wn. App. 546, 549, 96 P.3d 410 (2004). Constructive possession may be proved by circumstantial evidence. *State v. Sanders*, 7 Wn. App. 891, 893, 503 P.2d 467 (1972). Proof of the defendant's exclusive control is not necessary to establish constructive possession. *State v. Davis*, 117 Wn. App. 702, 708-09, 72 P.3d 1134 (2003), *review denied*, 151 Wn.2d 1007 (2004).

Here, the State produced sufficient evidence from which any rational trier of fact could conclude that Wright constructively possessed the lockbox—and all the contents therein including the heroin—discovered on the front seat of his automobile. At the time of Wright's arrest, he was the sole occupant of the vehicle and the arresting officers immediately noticed the lockbox on the passenger seat, clearly within Wright's reach. Further, after validly obtaining a search warrant, Deputy Nordstrom discovered paperwork in the lockbox, including a letter addressed to Wright from the Washington State Department of Licensing and multiple "money gram" receipts with Wright's name on them. Last, Wright admitted at trial to owning the lockbox. Although Wright claimed that he had loaned his car to a friend some hours before and that he was unaware of the illegal contents of the box found at the time of his arrest, we defer to the trier of fact on issues of witness credibility and the persuasiveness of the evidence. *Walton*, 64 Wn. App. at 415-16. Accordingly, the State presented sufficient evidence to support Wright's unlawful possession of heroin conviction.

B.    POSSESSION WITH INTENT TO DELIVER

To convict Wright for unlawful possession of a controlled substance with intent to deliver (methamphetamine), the State had to prove beyond a reasonable doubt that he (1) unlawfully possessed (2) with intent to deliver (3) a controlled substance. RCW 69.50.401(1), (2)(b); *State v. Sims*, 119 Wn.2d 138, 142, 829 P.2d 1075 (1992). A jury may infer the defendant's specific criminal intent from conduct plainly indicating such intent as a matter of logical probability. *Delmarter*, 94 Wn.2d at 638. Mere possession of a controlled substance is generally insufficient to establish an inference of intent to deliver; rather, at least one additional factor must be present. *State v. Goodman*, 150 Wn.2d 774, 783, 83 P.3d 410 (2004).

12

Here, as we explained with regard to Wright's conviction for heroin possession, Wright had constructive possession of the lockbox found on the passenger seat of his vehicle and all the contents inside, including the methamphetamine. Moreover, Wright not only possessed quantities of methamphetamine in an amount greater than police normally associate with personal use, he also possessed the methamphetamine in a manner from which any reasonable juror could infer that he intended to deliver it. Deputy Nordstrom testified that when searching Wright's vehicle pursuant to the properly obtained search warrant, he discovered a digital scale and three separate containers containing methamphetamine. Nordstrom testified that in his experience, the type of scale discovered is "used to weigh drugs." 3 RP at 302. Further, Nordstrom explained that because he found three separate quantities of methamphetamine, all larger than is typical for personal use, "[i]t would suggest . . . that the person in possession of those was a drug dealer, rather than a drug user." 3 RP at 340. Viewing this evidence in a light most favorable to the State, we hold that sufficient evidence supported the jury's verdict finding Wright guilty of unlawful possession of a controlled substance with intent to deliver.

C.    FIREARM POSSESSION

To convict Wright of second degree unlawful possession of a firearm, the State needed to prove beyond a reasonable doubt that Wright, (1) having been previously convicted of a felony, (2) knowingly had a firearm (3) in his possession or control. RCW 9.41.040(2)(a)(i). Wright stipulated to having a previous felony conviction at trial. Accordingly, we need only determine whether Wright knowingly had a firearm in his possession or control.

Here, Wright had constructive possession of the lockbox found on the passenger seat of his vehicle and all the contents inside, including the firearm. And as we explained in *State v. Turner*, 103 Wn. App. 515, 524, 13 P.3d 234 (2000), "a jury may infer that a defendant has

13

constructive possession of an item when that person has dominion and control over the premises where an item is located. Ownership and actual control of a vehicle establish dominion and control." Accordingly, viewed in a light most favorable to the State, sufficient evidence supported the jury's verdict finding Wright guilty of second degree unlawful possession of a firearm.

### D.     FIREARM ENHANCEMENT

In his statement of additional grounds (SAG),[5] RAP 10.10, Wright argues that insufficient evidence supports his firearm enhancement because he "was not in a commission of a crime and the firearm was not easily accessible." SAG at 1. Because the evidence, viewed in the light most favorable to the jury's verdict, supports a finding that a sufficient nexus existed between Wright, the crime of unlawful possession of a controlled substance with intent to deliver, and the weapon found in the passenger seat lockbox, we disagree.

A defendant is armed with a deadly weapon, as a matter of law, if the weapon is easily accessible and readily available for use for either offensive or defensive purposes. *State v. Barnes*, 153 Wn.2d 378, 383, 103 P.3d 1219 (2005); *State v. Gurske,* 155 Wn.2d 134, 137, 118 P.3d 333 (2005); *State v. Valdobinos*, 122 Wn.2d 270, 282, 858 P.2d 199 (1993). "[T]he mere presence of a deadly weapon at the scene of the crime, mere close proximity of the weapon to the defendant, or constructive possession alone [are] insufficient to show that the defendant is armed." *State v. Brown*, 162 Wn.2d 422, 431, 173 P.3d 245 (2007). There must be a nexus

---

[5] Wright also argues in his SAG that he was denied his right to counsel of his choice. But as the United States Supreme Court explained in *United States v. Gonzalez-Lopez*, 548 U.S. 140, 151, 126 S. Ct. 2557, 165 L. Ed. 2d 409 (2006), "[T]he right to counsel of choice does not extend to defendants who require counsel to be appointed for them." *See also State v. Aguirre*, 168 Wn.2d 350, 365, 229 P.3d 669 (2010). Here, the record clearly reflects that Wright's trial counsel was assigned through the Department of Assigned Counsel.

between the defendant, the crime, and the weapon. *State v. Schelin*, 147 Wn.2d 562, 567-70, 575, 55 P.3d 632 (2002). To apply, the nexus requires analyzing "the nature of the crime, the type of weapon, and the circumstances under which the weapon is found." *Schelin*, 147 Wn.2d at 570.

Here, the crime involved was unlawful possession of a controlled substance with intent to deliver and the weapon involved was a .40 caliber pistol located in the *same* lockbox (admittedly owned by the defendant) as the drugs. In a series of cases involving drug manufacturers, Washington courts have held that the presence of weapons allows for a reasonable inference that the drug manufacturer intends to defend their manufacturing operation in case of attack. *See State v. Eckenrode*, 159 Wn.2d 488, 494, 150 P.3d 1116 (2007) ("A jury could readily have found that the weapons were there to protect the criminal enterprise."); *State v. Simonson*, 91 Wn. App. 874, 883, 960 P.2d 955 (1998) ("It is . . . reasonable to infer that the purpose of so many loaded guns was to defend the manufacturing site in case it was attacked. We conclude that the evidence is sufficient to support the deadly weapon enhancement."), *review denied*, 137 Wn.2d 1016 (1999).

There is no principled reason to distinguish these cases from the case at hand. Having determined that Wright had access to the drugs in his lockbox on the passenger seat, it was reasonable for the jury to infer that Wright could easily access the gun located with the drugs and that the gun was readily available for offensive or defensive purposes. Accordingly, we affirm the firearm enhancement.

No. 41949-1-II

COMMUNITY CUSTODY PROVISIONS

Last, Wright argues that the sentencing court's imposed condition that he "shall have no contact with drug possessors, users, [or] sellers" violates his freedom of association because he has no way of knowing whether most people he meets are involved with drugs. Br. of Appellant at 55. We agree. Without qualifying that the prohibited contact with drug users be knowing, the sentencing court's imposed condition is impermissibly vague. Accordingly, we remand to the sentencing court for clarification.

RCW 9.94A.505(8) authorizes a trial court to "impose and enforce crime-related prohibitions and affirmative conditions." Nevertheless, an unconstitutionally vague condition

> cannot be cured by allowing the probation officer an unfettered power of interpretation, as this would create one of the very problems against which the vagueness doctrine is meant to protect, i.e., the delegation of "basic policy matters to policemen . . . for resolution on an ad hoc and subjective basis."

*United States v. Loy*, 237 F.3d 251, 266 (3rd Cir. 2001) (quoting *Grayned v. City of Rockford*, 408 U.S. 104, 109, 92 S. Ct. 2294, 33 L. Ed. 2d 222 (1972)); *see also State v. Sansone*, 127 Wn. App. 630, 642, 111 P.3d 1251 (2005).

Here, while the sentencing court's crime-related prohibition directly relates to the circumstances of Wright's crime without a knowledge requirement, the provision—as written— is too vague to provide meaningful guidance as to what type of behavior would constitute grounds for Wright's violation of the custody provision. Accordingly, remand is necessary so that the sentencing court may provide greater specificity in its imposed community custody provisions.

16

No. 41949-1-II

We affirm Wright's judgment and sentence but remand to the sentencing court to correct the community custody provisions attached to Wright's sentence.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

QUINN-BRINTNALL, P.J.

We concur:

VAN DEREN, J.

PENOYAR, J.