Filed
Washington State
Court of Appeals
Division Two

February 17, 2021

**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

**DIVISION II**

| | |
|---|---|
| STATE OF WASHINGTON, | No. 53477-1-II |
| Respondent, | |
| v. | |
| JASON RICHARD MATSON, | UNPUBLISHED OPINION |
| Appellant. | |

GLASGOW, J.—Jason Richard Matson appeals his conviction for unlawful possession of a firearm. Matson contends that his trial counsel provided ineffective assistance by failing to move to suppress evidence of a gun found in Matson's car on the basis that it was the fruit of an unlawful *Terry*[1] frisk. Although Matson's trial counsel did move to suppress this evidence on a different basis, Matson contends that minimally effective counsel would have advanced his specific *Terry* theory as an alternative argument and the motion would likely have been granted.

We hold that defense counsel did not provide ineffective assistance. Without reaching *Terry*, we conclude that the officers lawfully removed Matson from his car to secure the scene and complete a traffic stop, which led them to see the gun in open view from a lawful vantage point. Matson has not shown that a motion to suppress on the particular grounds he describes would likely have been granted, so he has established neither deficient performance nor prejudice.

Matson raises additional arguments for reversal in a statement of additional grounds for review (SAG). None of the arguments in Matson's SAG merits reversal of his conviction. We affirm.

---

[1] *Terry v. Ohio*, 392 U.S. 1, 30-31, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

FACTS

A.    Traffic Stop

At around 10:00 p.m. on July 23, 2018, Tacoma Police Department Officers William Flippo and Armando Farinas were on patrol. Farinas was in his final month of training and Flippo was his training officer that day. The officers were in the same patrol car and Farinas was driving.

The officers saw a Toyota speed by, "weav[ing] in and out of the lanes" and abruptly changing lanes without signaling. Verbatim Report of Proceedings (VRP) (Apr. 10, 2019) at 371. Farinas turned on the patrol car's emergency lights and followed the Toyota to conduct a traffic stop. Farinas testified that he "had to get up to speeds of approximately 70 miles an hour to complete my stop." *Id.* Farinas caught up to the vehicle and pulled it over partway up a freeway on-ramp.

The officers could not see the markings on the Toyota's license plate because it appeared to have been painted over or otherwise obscured. Farinas saw there was one person in the vehicle. He approached the driver's side window. The driver, later identified as Matson, rolled the window down partway. Farinas identified himself as a police officer, said he was stopping Matson for traffic violations, and asked Matson to identify himself.

Matson did not have identification or a vehicle registration. He argued about the reason for the stop. Because Matson was driving erratically, Farinas was concerned for his and Flippo's safety. Farinas told Matson to place his hands on the steering wheel, but Matson did not do so. Matson told Farinas that the vehicle belonged to him but he did not have paperwork to prove it.

Flippo, who was standing on the passenger side of the car, looked inside the car with his flashlight and saw an empty firearm holster on the floor of the back seat area behind the driver's

side seat. Flippo told Farinas about the empty holster, and directed Farinas to "get the driver out of the vehicle and detain him." VRP (Apr. 10, 2019) at 351. Farinas ordered Matson out of the car.

As Matson stepped out of the car, Matson reached for the waistband area of his pants. Concerned for his and Flippo's safety, Farinas handcuffed Matson, patted down Matson's exterior clothing for weapons, and found none.

Farinas then placed Matson in the back seat of his patrol car. Because Matson provided no identification or registration and the license plate was obscured, Farinas and Flippo returned to the vehicle to search for its vehicle identification number (VIN). Farinas testified that the unreadable license plate and erratic driving made him wonder "if the vehicle could have been stolen." VRP (Apr. 10, 2019) at 375.

The VIN is typically printed on the vehicle's dashboard and on the inside of the door frame. Farinas explained that "while reading the VIN on the dash and transitioning to the VIN on the door," which had been left ajar, he saw the handle of what appeared to be a gun sticking out from under the driver's seat. VRP (Apr. 10, 2019) at 376. Farinas ran a National Crime Information Center check on Matson, which revealed that Matson had a felony conviction. Matson was arrested for unlawful possession of a firearm. The Toyota was impounded and Farinas obtained a search warrant for the vehicle.

Farinas searched the vehicle and found an operable semiautomatic pistol under the front seat of the car. Fingerprint analysis revealed prints matching Matson's on the gun's magazine. Farinas also determined the vehicle was registered to someone else but not stolen. Matson was charged with one count of unlawful possession of a firearm.

B.      Pretrial Motion to Suppress and Trial

Matson's trial counsel moved under CrR 3.6 to suppress evidence of the gun. Matson's counsel argued that it was not physically possible for the officers to have seen the gun from outside the vehicle and they discovered it by illegally entering the vehicle and searching it for weapons while Matson was detained in the patrol car. Because Matson was detained in the patrol car and could not access any weapons in his own car, counsel argued that the alleged vehicle search exceeded the lawful scope under *Terry*, rendering the warrant invalid and the evidence of the gun inadmissible as the fruit of an unlawful search. Counsel did not move to suppress the gun on the alternative basis that the officers exceeded the lawful scope of *Terry* by ordering Matson out of the car in the first place, which is what made it possible for the officers to spot the gun under the seat.

Matson testified at the CrR 3.6 hearing that he saw the officers enter his car and search it for around seven or eight minutes. Alicia French, an acquaintance of Matson's who happened upon the scene, testified that she saw one of the officers inside Matson's vehicle searching it while Matson was in the back seat of the patrol car. Farinas and Flippo, on the other hand, testified that they never entered the vehicle during the stop.

The trial court denied Matson's CrR 3.6 motion to suppress evidence of the gun. The trial court identified disputed facts, including that the officers testified they saw the grip of the gun while looking into the car from the outside, but Matson and French testified that the officers found the gun while searching inside the car at the scene of the arrest. After multiple findings related to credibility, including that French's testimony was inconsistent, she could not answer some

4

questions, and Matson had a prior conviction for a crime of dishonesty and a motivation to lie, the trial court found French's and Matson's testimony not credible.

In contrast, the trial court found Farinas's and Flippo's testimony credible. The trial court found that the officers observed the gun inside the car in open view while looking in from the outside. The trial court held that no search of the inside of the vehicle occurred at the scene of the arrest and probable cause supported the search warrant. The gun was the product of a legal search under the warrant and was therefore admissible.

At trial, the officers testified about how they found the gun, and the gun was admitted as physical evidence. The jury convicted Matson of unlawful possession of a firearm. Matson appeals his conviction. Matson also filed a SAG.

## ANALYSIS

### I. INEFFECTIVE ASSISTANCE OF COUNSEL

Matson argues that his trial counsel was ineffective because he failed to move to suppress the gun on the basis that Farinas and Flippo were not justified in performing a *Terry* frisk because they "had no reason to suppose Matson was armed and dangerous." Br. of Appellant at 6. Matson asserts that if the officers had not made him leave his car to be frisked and the front driver's side door had not been ajar, the officers would never have seen the gun. Although trial counsel did move to suppress the gun on the basis that it was the product of an unlawful search of Matson's vehicle at the scene of the arrest, Matson contends that minimally effective counsel would have argued alternatively that the gun was the fruit of an improper *Terry* frisk. According to Matson, this failure constituted per se deficient performance and prejudiced him because the motion would have been dispositive and likely would have been granted. We disagree.

5

A.      <u>Ineffective Assistance of Counsel Standards</u>

The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution guarantee effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 685-86, 104 S. Ct. 2052, 80 L. Ed 2d 674 (1984); *State v. Grier*, 171 Wn.2d 17, 32, 246 P.3d 1260 (2011). Ineffective assistance of counsel is a two-pronged inquiry. *Grier*, 171 Wn.2d at 32. Matson must show that his counsel's performance was deficient and that counsel's deficient performance prejudiced him. *Id.* at 32-33. A failure to prove either prong ends our inquiry. *State v. Hendrickson*, 129 Wn.2d 61, 78, 917 P.2d 563 (1996).

We apply "exceptional deference" when "evaluating counsel's strategic decisions," and "[i]f trial counsel's conduct can be characterized as legitimate trial strategy or tactics, it cannot" form the basis of an ineffective assistance claim. *State v. McNeal*, 145 Wn.2d 352, 362, 37 P.3d 280 (2002). "To rebut the presumption of reasonableness, a defendant must establish an absence of any legitimate trial tactic that would explain counsel's performance." *In re Pers. Restraint of Lui*, 188 Wn.2d 525, 539, 397 P.3d 90 (2017). The petitioner must prove that "counsel's performance fell below an objective standard of reasonableness in light of all the circumstances." *Id.* at 538.

If an appellant argues that their trial counsel provided ineffective assistance by failing to move to suppress evidence, the appellant will prevail only if they show "that the motion likely would have been granted." *State v. D.E.D.*, 200 Wn. App. 484, 490, 402 P.3d 851 (2017). "Not every possible motion to suppress has to be made," and "[c]ounsel may legitimately decline to move for suppression on a particular ground if the motion is unfounded." *State v. Nichols*, 161 Wn.2d 1, 14, 162 P.3d 1122 (2007). "[A] claim of ineffectiveness due to failure to move to

suppress on a particular basis can be undermined to some degree if counsel moved to suppress on another ground" because a motion brought on one basis but not another suggests that counsel made a reasoned, strategic decision. *Id.* at 15.[2]

Even if an appellate court concludes that trial counsel's performance was deficient, the appellant must also prove prejudice. An appellant must show that, but for counsel's deficient performance, "there is a reasonable probability . . . the outcome of the proceeding would have been different." *Id.* at 8. For an ineffective assistance claim based on failure to move to suppress, "[a]n appellant demonstrates actual prejudice when [they] establish[] from an adequate record that the trial court likely would have granted a suppression motion." *State v. Abuan*, 161 Wn. App. 135, 146, 257 P.3d 1 (2011).

B.      Removal of Matson From the Vehicle

"Once a driver has been validly stopped, a police officer may order [them] to get out of the vehicle, 'regardless of whether the driver is suspected of being armed or dangerous or whether the offense under investigation is a serious one.'" *State v. O'Neill*, 148 Wn.2d 564, 582, 62 P.3d 489 (2003) (quoting Charles W. Johnson, *Survey of Washington Search and Seizure Law: 1998 Update*, 22 SEATTLE U. L. REV. 337, 461 (Fall 1998)); *see also State v. Mecham*, 186 Wn.2d 128, 144, 380 P.3d 414 (2016) (lead opinion). Taking steps to control the scene of the traffic stop,

---

[2] Where the appellant claims constitutional error based on counsel's failure to move to suppress evidence, it does not matter that the record is undeveloped on this issue because counsel never moved to suppress. *State v. Contreras*, 92 Wn. App. 307, 312-314, 966 P.2d 915 (1998). So long as the record as a whole "is sufficiently developed for us to determine whether a motion to suppress clearly would have been granted or denied . . . we can review the suppression issue, even in the absence of a motion and trial court ruling thereon." *Id.* at 314; *see also State v. Abuan*, 161 Wn. App. 135, 148-49, 257 P.3d 1 (2011).

"including ordering the driver to stay in the vehicle or exit it, as circumstances warrant" "is a de minimis intrusion upon the driver's privacy under [article I, section 7]." *State v. Mendez*, 137 Wn.2d 208, 220, 970 P.2d 722 (1999), *abrogated on other grounds by Brendlin v. California*, 551 U.S. 249, 127 S. Ct. 2400, 168 L. Ed. 2d 132 (2007).

Here, where Farinas and Flippo saw Matson speed, weave, and change lanes without signaling, they were justified in stopping Matson for traffic infractions. *State v. Arreola*, 176 Wn.2d 284, 293-94, 290 P.3d 983 (2012). The officers then saw an empty holster in Matson's car and decided to remove him from the vehicle to control the scene while completing the traffic stop. Because the Washington Supreme Court has established that an officer can order a driver to exit a vehicle during a traffic stop without further suspicion, the officers were justified in doing so here. The trial court found, and Matson does not contest on appeal, that after removing him from the vehicle and completing the traffic stop, the officers saw the gun in open view by looking into the vehicle from a lawful vantage point.

The removal of Matson from the car was lawful under *O'Neill* and *Mendez*. The officers did not need to rely on *Terry* to lawfully require Matson to step out of the car. Evidence of the gun was admissible because the officers properly removed Matson from the car. A motion to suppress based on the argument that the gun was the product of an unlawful *Terry* frisk would therefore have failed.

Accordingly, we hold that defense counsel's performance was not deficient because counsel chose not to move to suppress on an unfounded basis. *D.E.D.*, 200 Wn. App. at 490; *Nichols*, 161 Wn.2d at 14. We conclude that Matson has not rebutted the presumption that his counsel made a legitimate strategic decision to move to suppress on a different basis. *See Lui*, 188

Wn.2d at 539. Further, because the trial court would not likely have granted a suppression motion based on the argument that the gun was the fruit of an unlawful *Terry* frisk, Matson has not shown prejudice. *See Abuan*, 161 Wn. App. at 146.

## II. STATEMENT OF ADDITIONAL GROUNDS FOR REVIEW

Matson's SAG raises additional claims that he argues require reversal of his conviction. We hold that Matson's SAG arguments do not merit reversal.

A.      Matters Outside the Record

"If a defendant wishes to raise issues on appeal that require evidence or facts not in the existing trial record, the appropriate means of doing so is through a personal restraint petition." *State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995). Because the following arguments rely on matters outside this record, we decline to consider them.

1.      Conflict of interest/ineffective assistance of counsel

Matson appears to argue that his trial counsel was constitutionally ineffective due to a conflict of interest that caused him to fail to challenge the initial traffic stop. Matson argues that there was no radar, laser, video, or audio recordings or other physical evidence to substantiate the officers' testimony that Matson was speeding or violating traffic laws. Accordingly, Matson contends that the traffic violations were merely "a pretext to stop the defendant['s] vehicle in order to investigate the defendant and his private affairs." SAG at 2. There is no evidence in the record suggesting that the traffic stop was pretextual or that Matson's counsel had a conflict of interest that prevented him from moving to suppress evidence on this basis. While Matson may bring this argument in a personal restraint petition, we do not further consider this argument here. *McFarland*, 127 Wn.2d at 335.

2.    Destruction of evidence/*Brady* violation

Matson argues that the Tacoma Police Department violated its own procedures and acted in bad faith by allowing his car to be sold at auction only two weeks after the arrest. Matson contends that this prevented his trial counsel from investigating and preparing his defense. Matson asserts that the vehicle's tinted windows made it impossible to see inside, and "had this piece of critical evidence been preserved for the defense to examine this case would have been dismissed." SAG at 12. Matson further argues that the sale of his vehicle violated his constitutional rights under *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), requiring the State to disclose material exculpatory evidence to the defense. To support his argument, Matson attached a portion of the Tacoma Police Department manual addressing vehicle towing and the inventory and impound records for his vehicle.

Despite Matson's attachment, the record does not contain evidence sufficient for us to determine whether the police department improperly disposed of evidence in this case and violated Matson's constitutional rights. Matson may raise this issue in a personal restraint petition, but we do not review this issue further. *McFarland*, 127 Wn.2d at 335.

B.    Illegal Search and Seizure

Matson argues that he was subjected to an unlawful search and seizure because Farinas and Flippo did not have probable cause to conclude that there was a gun in the car and because the officers improperly searched the vehicle.

The trial court found below that no search of the vehicle occurred at the scene of the arrest. Matson does not provide evidence sufficient for us to reach a different conclusion, and the trial court's decision was based on credibility determinations, which we do not review. *See State v.*

No. 53477-1-II

*Thomas*, 150 Wn.2d 821, 874, 83 P.3d 970 (2004). Testimony in the record supports the trial court's finding that no search of the vehicle occurred at the time of the arrest, and Matson has not established that the trial court erred in making this finding.

CONCLUSION

We affirm Matson's conviction because defense counsel was not ineffective and Matson's SAG arguments do not otherwise provide a basis for reversal.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Glasgow, J.

We concur:

Worswick, P.J.

Maxa, J.

11